# FELDER et als. *vs.* DAVIS et als.

1. B D. conveyed certain slaves to J. D. in trust for the sole and separate use of E. F., a married woman, and her children. J. D. subsequently abandoned the trust and removed from the State, in consequence of which the slaves came into the possession of B. F., the husband of E. F., who, regardless of the rights of his wife and children, disposed of them to different persons, all of whom had notice of the trust, and one of whom had possession of the trust deed: *Held*—That a bill filed by E. F. and her children, against B. F. and the several persons who derive title through him, is multifarious.

2. A Court of Chancery should seldom exercise *proprio jure* its discretionary power of dismissing a bill for multifariousness, but should it do so, and the bill be found liable to that objection, an appellate court cannot reverse the decree.

Error to the Chancery Court of Macon. Tried before the Hon. David G. Ligon.

The bill, which was filed by the plaintiffs against the defend-

ants in error, alleges that Elizabeth Felder is the daughter of Bud Davis, deceased, and the wife of B. B. Felder, one of the defendants, and that the other complainants are the children of the said Elizabeth and B. B. Felder; that in 1837 the said Bud Davis by deed of gift conveyed negro slaves Sam, Jack, Ansey, Cinda, Harry, Edy, Katy, and Jackson, to one James Davis, (another defendant,) in trust for said Elizabeth and her children, to be employed by her for the support and maintenance of herself and children, &c.; that said slaves immediately thereafter went into possession of said Elizabeth; that they subsequently were taken into the possession of the said trustee, and that said trustee shortly after, becoming embarrassed in his pecuniary affairs, neglected and abandoned the trust and removed out of this State to parts unknown; that upon this abandonment of the trust by the said trustee and his removal from the State, the said slaves came under the control and management of her husband, B. B. Felder, who disregarding said trust disposed of Harry, Sam, Edy, Katy and Jackson to one John Davis, now deceased, and mortgaged Ansey and Cinda to William Freeman, a defendant; that said B. B. Felder still has possession of Jack; that the defendant Goodman has possession of Sam, the defendant Flournoy of Katy, the defendant Mitchell of Jackson, and the defendant Blunt of Edy and Harry,—all under purchase from said John Davis; that said Freeman sold Ansey and Cinda under his mortgage, purchased them himself, and still holds possession of them; that the females have had numerous increase, and that their hire has been of great value; that said B. B. Felder, John Davis, Goodman, Flournoy, Mitchell, Blunt, and Freeman had notice of said deed of gift before they respectively acquired possession of said slaves; that said Freeman at the time he procured said mortgage to be made to him, received said deed of gift from said Felder, and has ever since retained the possession thereof; and that these several defendants have all combined to defraud complainants of their just rights under the said deed.

The prayer of the bill is that Freeman be compelled to produce the deed of gift; that the trust be enforced; that James Davis be removed and a new trustee appointed; that each of the defendants, Felder, Goodman, Flournoy, Mitchell, Blunt, and Freeman, be decreed to deliver up the slaves in their res-

pective possession with the increase, and to account for the hire, and for general relief.

The defendants answered severally, and some of them demurred for multifariousness, which demurrer the court sustained and thereupon dismissed the bill.

BELSER and COCKE, for the plaintiffs:

I. The bill contains equity.

1. The removal of the delinquent trustee and the appointment of a new one is a good ground of resort to a court of equity.— 2 Story's Eq. § 1287-9.

2. The production and establishment of the deed of trust, which the bill alleges is in the possession of Freeman, is another ground of equity.—Burroughs v. McNeill, 2 Dev. & Batt. Eq. 297.

3. The discovery of the increase of the female slaves, the accounting for the hire, and the avoidance of a multiplicity of suits, are additional grounds of equity.—Baird v. Bland, 3 Munf. 570.

4. The bill is filed to enforce a trust, with which Felder, the husband, is in contemplation of law chargeable, as well as *all* the other defendants, who hold under him with notice, &c.—2 Story's Eq. § 1257, and authorities cited in notes; Harkins v. Coalter, 2 Port. 463; Swoope v. Trotter, 4 Port. 27; Williamson v. The Bank, 7 Ala. 920—Ormond, J.; Colburn v. Broughton, 9 Ala. 351; Picquet v. Swan et al., 4 Mason, 443; Findley and Wife v. Patterson's Ex'rs, 2 B. Monr. 76; Bennett v. Davis, 2 P. Wms. 316; Adair v. Shaw, 1 Sch. & Lefr. 243 —see page 261 of that case; Bush v. Bush, 1 Strobhart's Rep. 377.

5. There is no adequate legal remedy. Felder, the husband, could not be sued at law by his wife, and without he is a party defendant, the remedy is incomplete.

II. The bill is not multifarious.—Story's Eq. Pl. § 285 a, 533-4-5; Mitf. Pl. 240-1; The Bank v. Walker, 7 Ala. 926; McCartney et al. v. Calhoun et al., 11 Ala. 110; Donaldson's Adm'rs v. Posey et al., 13 Ala. 752, and citations; Vann et als. v. Hargett et al., 2 Dev. & Batt. Eq. 35; Parish v. Sloan, 3 Ired. Eq. 607—decided in 1845; Brinkerhoff v. Brown, 6 Johns. Ch. 139, where all the English authorities are reviewed;

Gaines and Wife v. Chew, 2 How. 619; Nye v. Moore, 1 Sim. & Stu. 64; Campbell v. McKay, 1 My. & Cr. 623; Delafield et al. v. Anderson, 7 S. & M. 630; Whitworth's Eq. Pr. 81; 62 vol. Law Lib. note a. The facts, when examined, of each of the cases of Saxton v. Davis, 18 Vesey, 71—Colburn v. Broughton, 9 Ala. 352—and Meacham v. Williams, ib. 842, will be found to present an entirely different case from the one at bar.

III. But if the bill be multifarious, only a portion of the defendants have demurred, and the bill should have been dismissed as to them, and not as to those who waived the objection.— Gaines and Wife v. Chew, 2 How. *supra;* Chapman v. Chunn et al., 5 Ala. 402; Campbell v. McKay, 1 My. & Cr. *supra.*

McLESTER & GUNN, for the defendants :-

The bill is clearly multifarious—1st. Because there is clearly a misjoinder of complainants, in this, the children of Mrs. Felder have no interest in the account for hire, neither any present interest in the property.—See Colburn v. Broughton, 9 Ala. 361; Dunn v. Dunn, 2 Simm. 329; 2 Cond. Ch. 439; King of Spain et al. v. Marlad, 4 Rus. 225; Morris et al. v. Dillard, 4 S. & Mar. 636; Carmichael et al. v. Browder, 3 How. 258; Richardson v. McKinson & Co., Litt. Sel. Cases, 322; Whitaker v. DeGraffenreid, 6 Ala. 303; Boyd & Sydam v. Hoyt & Powell, 5 Paige's Ch. 65; Story's Eq. Pl. 392; Wilkins & Wilkins v. Judge & Dunklin, 14 Ala. 135; Moore et al. v. Armstrong et al., 9 Por. 700; Hudson v. Madison, 12 Sim. 416.

2. Because the same presents several distinct defendants, claiming titles in different modes—not in any manner connected with each other—not claiming through any common source— each adverse to the trustee—no act is charged in which the several defendants have participated—in fact nothing save their several interference with complainant's right, which will not authorise their being joined in one bill.—Colburn v. Broughton, before cited; Meacham v. Williams et al., 9 Ala. 842; Saxton v. Davis, 18 Vesey 80; Harmar v. Hogg, 2 ib. 323; Dilley v. Doig, ib. 487; Story's Eq. Pl. 225 and note; ib. 226-7, 231-2; see 285, 285 a, 533-4-5; Mead v. Acklan; 2 Sim. 331; Dunn v. Dunn, ib. 439; Attorney General v. The Goldsmiths Co., 7 Cond. Ch. 573; Marcus v. Peler, 5 ib. 202; Salvidge v. Hyde,

Felder et als. v. Davis et als.

5 Mad. 138; Carmegen v. United German &c. Churches, 2 Sandf. Ch. 250; Swift v. Eckford, 6 Paige's Ch. 27-8; Everett v. Winn, 1 S. & Mar. 67; Wren et al. v. Gaydon, 1 How. 365; Ward v. The Duke of Northumberland, 2 Anst. Rep. 469; Whaley v. Dawson, 2 Sch. & Lef. 367; Daniel &c. v. Morrison's Ex'rs, &c., 6 Dana 186; West v. Randall et al., 2 Mason Rep. 200; Johnson v. Johnson, 6 Johns. Ch. 165; McIntosh et al. v. Alexander et al., Jan. Term 1849; Bryan v. Blyth, 4 Blackf. 249; Ray v. Jones, 7 J. J. Marsh. 37; Finley v. Harrison, 5 ib. 158; Carmichael v. Bowder, 3 How. 252; Thurman v. Shelton, 10 Yerg. 383; State of Ohio v. Ellis, 10 Ohio, 456; Bigwold v. Audland, 11 Sim. 21; Merrill v. Lake, 6 Ohio, 373.

An attempt is here made to litigate the title to personal property in a court of equity, with persons who neither claim under nor are in privity with the trustee, merely because trust property is the subject of the controversy, without attempting to show why ample redress cannot be had at law—in violation of that ancient and well established rule in such cases, that a court of equity will not take jurisdiction where a court of law can give ample relief. In fact, complainant's remedy at law is unembarrassed.—Colburn v. Broughton, 9 Ala. 351; Hardeman et al. v. Sims et al., 3 Ala. 747; Carraway v. Wallace et al. 2 ib. 542; Harrison v. Hammond & Hicks, 1 Por. 423; Clay's Dig. 581; Barrus et al. v. Doty, Harrington's Ch. 1; Commissioners of Lapier v. Hart et al., ib. 157; Farley v. Farley, 1 McC. Ch. 506.

DARGAN, C. J.—After a deliberate re-examination of this case, I am satisfied that the bill is liable to the objection of multifariousness. It is true that general rules cannot be laid down that will guide us correctly in all cases in determining whether a bill is multifarious or not, and every case must depend on its own peculiar circumstances; yet we think we can safely say that if the several defendants are not shown to claim the title asserted by the complainant, nor to have derived their title from the same source from which the complainant claims to derive his, but if on the contrary it is shown that the title of the defendants is derived from a different source and is in no manner connected with the title of the complainant, the bill is multifarious, unless it be shown that all the defendants have participated in the same

wrongful acts, or unless they are in some manner connected
with each other in interest.    In the case of Saxton v. Davis, 18
Vesey 80, Lord Eldon said that a bill which seeks to enforce
different demands against different defendants, who may be res-
pectively liable, but not as connected with each other, is clearly
multifarious.    In Dilley v. Doig, 2 Vesey 487, the complain-
ant, as the proprietor of an improved edition of Entick's Dic-
tionary, had obtained an injunction against the defendant to res-
train him from selling a spurious edition printed in Edinburgh.
He then moved to amend his bill by making another bookseller
a party defendant, and his motion was refused on the ground
that the right of the complainant against each defendant was sep-
arate and distinct, and that there was no privity or connection
whatever between them.    In the case of Meacham v. Williams
et al., 9 Ala. 482, this court held the bill multifarious, which
sought to charge several defendants with several distinct wrong-
ful acts relative to different slaves to which the complainant was
equitably entitled, although his title to all the slaves was identi-
cally the same.    We must not only overrule this decision, if we
sustain this bill, but we must hold the broad proposition that a
complainant who has an equitable right may maintain a joint bill
against all who interfere with or injure it, although there may
be no connection whatever between the defendants.    Such a
proposition cannot be sustained.    All we think would admit
that if a complainant had an equitable title to a parcel of land,
different portions of which were held adversely by different per-
sons, whose claim or title commenced by disseisin, a joint bill
could not be sustained against all, on the ground alone that the
title of the complainant to all the land was the same.    We think
the case made by this bill is the same in principle as the case
supposed.    The bill shows that Bud Davis, the father of Mrs.
Felder, conveyed the slaves to James Davis in trust for the sole
use of Mrs. Felder and her children, and that the trustee aban-
doned all control over the property and removed from the State,
in consequence of which the slaves came into the possession
and under the control of Barzella Felder, the husband, who,
without regard to the rights of the complainants, and for his own
use, sold and conveyed them at different times to different indi-
viduals.    According to the allegations of this bill, the several
defendants hold the slaves they respectively claim by the several

wrongful acts of one who had no title to them either at law or in equity. The defendants are not shown to claim the title of the complainants, nor to have derived title from the same source from which the complainants claim title, and there is no connection whatever between them. They cannot therefore be all joined in the same bill.

The authorities relied on by the plaintiffs do not militate against the view we have here taken. In the case of Gaines & Wife v. Chew et al., the bill showed that the title of the complainants was derived from Mr. Clarke, the father of Mrs. Gaines ; it was also shown that the defendants claimed title to the land through the supposed will of Clarke, executed in the year 1811, the validity of which was denied. The title of all the defendants depended on the validity of this will, and therefore it was the common ground of defence to all—the ligament that bound them all together. In the case of Brinkerhoff v. Brown, 6 Johns. Ch. 139, the object of the bill was to subject certain property to the payment of the debts of the Genessee Manufacturing Company, which had been fraudulently conveyed to different persons. The title of the defendants was derived from the same source from which the complainants claimed their's, to-wit, from the Genessee Manufacturing Company, and the validity of their title depended on the question of fraud. The point in issue made by the bill was the fraud, and all the defendants were interested in repelling this charge. Without examining in detail all the cases refered to by counsel, we deem it sufficient to say that they show either that the defendants claimed the title asserted by the complainants, or that they claimed to derive title from the same source, either mediately or immediately, from which the complainant derived his ; then some fact or circumstance was alleged which rendered the title of the defendants invalid, which fact or circumstance being the common ground of defence to all, became the connecting link that bound them all together. Where the defence of all the defendants centers in the point in issue, they may all be joined in one suit, notwithstanding they may separately possess distinct parcels of the property sought to be recovered ; but to hold that several defendants, who have no connection with each other, and who are shown to hold by several distinct wrongful acts, may all be joined in one bill, merely because the equitable title

of the complainant is the same to all the property sought to be recovered, would in my judgment be to deny altogether that multifariousness is an objection to a bill in equity.

2. It is, however, insisted that the court erred in dismissing the bill as against those who did not demur for multifariousness, even if the bill was liable to that objection. A demurrer to a bill for multifariousness, like a demurrer to a declaration for a misjoinder of actions or parties, goes to the whole suit, and if two or more are improperly joined in the same bill as defendants, all or either of them may demur.—Boyd v. Hoyt, 5 Paige, 65; 2 Moloy, 373; Ward v. The Duke of Northumberland et al. 2 Anst. 469. Indeed it is the well settled rule of practice in the English Chancery Court, that the court itself, with a view to the regularity of its own proceedings, may in its discretion, *proprio jure* insist upon the objection, although the parties may waive it.—Story's Eq. Pl. § 284; Greenwood v. Churchill; 1 Mylne & Keene, 546; Oliver v. Piatt, 3 Howard's U. S. 333; 10 Ohio R. 456. The court, however, would seldom exercise this discretionary power, but should it do so on account of such an objection to the bill, and on an appeal we should find the bill multifarious, we cannot see how we could say that the court erred without assuming to control the court, when the act was within the proper range of its discretion. The decree in this case shows that the bill was dismissed for this specific reason, and we find the bill to be multifarious: We therefore cannot pronounce that the court erred. Had the court overruled the objection or allowed an amendment on the application of the plaintiffs, a different question would then have been presented to us, but the bill being dismissed and for a sufficient legal cause, we cannot say there is error, and consequently the decree must be affirmed.

CHILTON, J., not sitting.