HALSTEAD et al. *vs.* SHEPARD.

1. In determining the question of multifariousness the court can look to the bill only, and not to the answers or proof.

2. A bill is not multifarious, which seeks to establish complainant's interest as a partner in certain notes payable to the partnership, which are alleged to have been fraudulently transferred by his co-partner to the other defendants, by separate assignments made at different times.

3. When a note payable to a partnership is transferred by one of the partners in payment of his individual debts, the purchaser acquires only the assignor's interest, and holds the note subject in equity to the claim of the other partners.

4. And an assignee who purchases for cash, after the maturity of the note and while it is in the hands of an attorney for suit, relying upon his assignor's representations as to the state of accounts between his co-partner and himself and his right to dispose of the note, is affected with notice of the other partner's interest upon a settlement of the partnership accounts.

5. Ordinarily, during the existence of the partnership, one partner, acting within the scope of the partnership business, may sell and dispose of the entire interest in the partnership effects; but when the firm, though not formally dissolved, has closed its business, and reduced all its assets to the shape of two notes payable to the firm, if one partner fraudulently transfers these, the purchaser takes them subject to the other partner's equity.

6. The answer of one defendant cannot be used as evidence against his co-defendants in stating an account before the master; but if the other answers and proof in the cause show a greater balance against them than the account as stated on the basis furnished by the answer, it is error without injury.

Halstead et al. v. Shepard.

APPEAL from the Chancery Court at Monroeville.
Heard before the Hon. J. W. LESESNE.

THIS was a bill filed by Alfred Shepard, the appellee, against Benjamin H. Halstead, his late co-partner, Wilson Ashley, Elijah McCreary, Willis Strickland and William Thomas as administrator of Joseph Thomas, deceased. It alleges that complainant and said Halstead entered into a co-partnership for the purpose of building a mill in Conecuh County; that in pursuance of said agreement, they built in company a saw and grist mill, and run the same for a certain time named in said bill; that they afterwards sold out the mills, with the lands on which they were situate, and all their improvements, to one Joseph Thomas, for four hundred thousand feet of lumber to be delivered at a certain place named, to-wit: the head waters of Pensacola Bay, within a given time, and delivered to the said Thomas the possession thereof; that a small part of the lumber was delivered, but there being a breach of the contract, the said Halstead, who was left to wind up the partnership affairs, whilst the complainant had gone to Florida in order to receive and dispose of the lumber agreed to be paid for said mill, sued out an attachment against the said Thomas, and had levied or was about to levy upon property, when said claim was adjusted by the said Thomas giving to the said Halstead two certain notes, payable to the said Halstead & Shepard, made by the said Joseph Thomas, with one William Thomas and one John. S. Leigh as sureties, one note for the sum of $2050, and one for the sum of $2650, each dated March 12, 1840, and each payable on the first day of March next after the date thereof; that the notes were unpaid at maturity, and suits were commenced thereon the next day in the Circuit Court of Conecuh County, where all the makers resided, by Messrs. Parsons & Cooper, attorneys at law; that before judgment was obtained, however, the said Jos. Thomas departed this life, and William Thomas administered on his estate; that judgment was rendered against the said William Thomas and the said Leigh, on each of the said notes, in the name of Halstead & Shepard; that the complainant was informed that the defendant Ashley had or claimed to have some interest in one of the notes, which he acquired from the said Halstead by shaving the same, or at a usurious rate of discount,

and that the other defendants also claimed some interest in the other of the notes, which they had acquired in like manner or in payment of a debt due and owing to them by the said Halstead individually.

The bill charges that the said Ashley, McCreary and Strickland obtained possession of the papers, or an interest in the judgments based upon them, from the said Halstead, fraudulently and colluding with him, with an intent to cheat the complainant out of his said interest therein ; that in the partnership existing in the building of the said mill between complainant and the said Halstead, they were equally interested, and the said complainant expended as much, or about as much money as the said Halstead, and that the complainant is entitled to one half of the said notes. The bill calls upon the said defendants to make known their actual or pretended interest in the said notes, by what means that interest was acquired, what was paid for said notes, and in what manner ; and prays that the partnership account be settled between the complainant and the said Halstead, and that the one half of the said notes be decreed to belong to the said complainant. The bill charges that the said Halstead is insolvent, and that he and the other defendants refused to acknowledge the rights of complainant, or to give him any part of said notes ; that they have been paid by the said Thomas, administrator, and the money is in the hands of the said defendants. The bill alleges that the notes have been transferred to Ashley, McCreary and Strickland, but in what manner is not stated, and alleges such transfer to have been made with notice to all of them of the rights of the complainant, and that they hold them in such manner as to enable the complainant to call upon them to pay to him his portion of said notes.

Each of the defendants answers separately, and each admits the existence of the partnership, the building and sale of the mill, the taking of the notes, and the suits thereon, as stated in the bill. They all admit that judgments were rendered in the Circuit Court of Conecuh County on said notes, both against said William Thomas and said Leigh, the sureties of Joseph Thomas, and also against the said William Thomas, administrator of the said Joseph, deceased ; that one of these judgments was for $2779 58 on the larger note, and the other for

Halstead et al. v. Shepard,

the sum of $1124 75 on the smaller note, the credits to which it was entitled reducing it to that amount.

The said Halstead states that, prior to the rendition of said judgments, he transferred Parsons & Cooper's receipt for the larger note to the said Ashley for the sum of $2000 in cash ; that the judgments on these notes were rendered at the Fall term of the court in 1841 ; that in August, 1842, he transferred $814 75 of the smaller judgment to the said Strickland in payment of a debt which he owed to the said Strickland, and on the 29th day of September, 1842, he transferred the balance of the said smaller judgment to the said McCreary in payment of a debt which he owed to the said McCreary ; all these transfers were made in the name of Halstead & Shepard ; admits that the said complainant had a half interest in said notes, and that said complainant was indebted to him only in the sum of $139 99, and this amount paid to him will make their accounts square, excluding entirely the two notes ; that at the time he transferred the receipt to the larger note to the said Ashley he told said Ashley that he had about $1200 of notes against said complainant, and judging at that time by what the lumber in his opinion ought to have brought, the said complainant, who had received the lumber, ought to have been indebted to him about $300 ; but on striking a balance of accounts it appears that the said complainant was indebted to him only about $139, 99, as above stated ; denies that he refused to settle with the complainant, and alleges his willingness to do so at all times ; admits that, at the present time, he is insolvent ; states that he could have commanded $1200 in notes against the complainant at the time he sold the note to Ashley, but the complainant told him that he was insolvent, and urged him not to purchase said notes, and he did not do so ; denies all fraud and all collusion or combination of every kind whatsoever.

The answer of McCreary and Strickland admits that they purchased their respective interests in the said judgment for debts due them by said Halstead individually ; deny all fraud ; deny that they had any notice that one half of the judgment belonged to complainant ; admit that the portion of the judgment owned by each of them has been settled by the said Thomas ; deny that they knew Halstead was insolvent at the time that they purchased said judgment.

68

The answer of Ashley admits that he purchased the larger note, or rather the receipt for the larger note, of the said Halstead, for the consideration and in the manner detailed by him; states that he was informed and believed that complainant had received his full share of the partnership effects, and that upon a fair accounting between the said Halstead and said complainant, he, the said Halstead, would owe nothing to the complainant; states that he thought then, and now believes, that the said Halstead had the full right and power to transfer the entire interest in the note to him. "Wherefore," he says, "he charges and affirms that he purchased said note without any notice or knowledge of any interest which said complainant had therein, further than was apparent on the face of the note; and the said Halstead told him expressly, that he, Halstead, had claims against the complainant for more than his interest in said notes; denies all fraud and all combination; admits that said note has been paid and settled by the said Thomas, denies that Halstead was insolvent at the time the note was transferred to him, but alleges that he was solvent and in good credit; denies that he has any interest in common with the said McCreary and the said Strickland.

William Thomas answers the bill also, but there is nothing in his answer differing from that of the other defendants, and it is not deemed necessary to state any of the facts which it contains.

The defendants demurred to the bill for multifariousness, but the demurrer was overruled.

Several witnesses were examined, but it is not deemed necessary that any of the testimony should be stated, except that of one, viz., Laird B. Flemming. In answer to one of the interrogatories propounded to him, he says: "In February, 1841, I asked Halstead, in Mr. Ashley's presence, if I could effect a trade with Shepard for his half of the Thomas notes, which were given for a saw mill on Bottle creek, near Brooklin, whether he would give me Shepard's part of the note. Mr. Halstead replied to me, that he was garnisheed by John Campbell, of Pensacola, for the amount of Shepard's part of that claim. Mr. Halstead distinctly acknowledged one half of the notes received for the mill was the property of Mr. Shepard, and in the presence of Mr. Ashley. I cannot be mistaken about Mr. Ashley's hearing the conversation between Mr. Hal-

stead and myself, because he, Mr. Ashley, remarked at the same time, that he was surprised at Mr. Halstead's being garnisheed on Mr. Shepard's account. Mr. Halstead further stated to Mr. Ashley and myself, that he had had offers for the notes so as to have realized the amount of the notes by discounting the lawful interest, but he had not done it, nor did he think he ought to do it until he could hear from Shepard. Halstead further stated to me and Ashley, that he, Ashley, had offered him, Halstead, fifteen per cent. discount for the notes, the whole amount of which, I think, was $4000.

"At the conclusion of the conversation between Halstead, Ashley and myself, above referred to, Mr. Halstead remarked, that he could have made a good trade with Ashley so far as his interest in the notes was concerned, but that he did not feel willing to do it without Shepard's approbation and consent, and further, that if Mr. Campbell withdrew his proceedings against Shepard, he, Halstead, would inform me, when Shepard and myself could go up, and he would close the matter."

On the final hearing, the Chancellor decreed the complainant the relief which he prayed, and ordered a reference to the master to take and state the account between the partners, and ruled that only such interest in the two notes passed to the respective purchasers as the said Halstead had, and further decreed that said parties who had received the money on said notes should refund to the complainant the proportion to which he should be found entitled, on the taking and stating the account as aforesaid.

The rendering of this decree is assigned for error. In making up the account, the master used the answer of the said Halstead as evidence against the other defendants, Ashley, McCreary and Strickland. To this the defendants below excepted, and the exception was overruled, both by the master and the Chancellor, and that is also assigned for error.

F. S. BLOUNT and THOS. H. WATTS, for appellants :

The bill is multifarious. There is no connection whatever shown between Ashley and the other defendants McCreary and Strickland. They claim separate and distinct interests, and by altogether a different title.—Colburn *et al.* v. Broughton *et al.*, 9 Ala. 351, and authorities there cited ; Turnipseed v. Good-

win *et al.*, 9 Ala. 372 ; McIntosh v. Alexander, 16 Ala. 87 ; Felder v. Davis, 17 Ala. 422, 424. The opinions in the two cases last cited were delivered by Judge Dargan, and they are particularly referred to as an answer to his argument in this case. There is here no common ground of defence; the relief may be perfectly made out as to McCreary and Strickland, without affecting Ashley's defence in the slightest degree. His case is wholly distinct from theirs, and he claims a judgment in no manner connected with theirs.

There was a complete remedy at law, as to all the defendants except Halstead.—White v. Toles and Dunlap, 7 Ala. 569 ; Burwell & Clarke v. Springfield, 15 Ala. 273.

The bill, answers and proof, so far as Ashley is concerned, show that he purchased the note on Thomas, payable to Halstead & Shepard, from Halstead, one of the partners. All fraud and collusion, charged in the bill, are fully and positively denied by the answers of Ashley and Halstead, and no proof is taken to sustain such allegations. The charge that Ashley knew, at the time he purchased the note, of Halstead's intention to defraud his partner, is expressly denied, and is wholly unsustained by proof. The charge that Halstead was insolvent, and that this fact was known to Ashley when he purchased, is positively denied by Ashley, and no proof is taken to sustain it. The only proof of Halstead's insolvency, is his own answer, in which he admits his insolvency at the time the bill was filed, nearly two years after Ashley's purchase. This was no proof as against Ashley, even if it related back to the time of his purchase. The whole case made by the bill and proof, so far as Ashley is concerned, is, whether one partner, whilst the partnership is in existence, has the right to sell or dispose of the property and choses in action belonging to the firm for valuable consideration ; and this question presents no difficulty.— All the elementary authors, as well as numerous adjudications, show that he has this power.—Story on Partnership 138 § 94, 140 § § 103, 104, 105 ; Collyer on Partnership 358 § § 394, 395, 400 ; Cullum v. Bloodgood, 15 Ala. 34 ; Harrison v. Sterry, 5 Cranch 300 ; Winship v. Bank of the United States, 5 Peters 560, 563 ; Arnold v. Brown, 24 Pick. 89 ; 1 Metcalf 518 ; 1 Brock. 456 ; 3 Johns. 70 ; 4 Johns. 277 ; 5 Hill N. Y. 163 ; 1 Barbour 648 ; 2 Paige 310.

Halstead et al. v. Shepard.

E. S. DARGAN and S. F. RICE, *contra :*

1. Assuming the case made by the bill to be true, and the acts of the defendants to the bill in reference to the notes and the judgments thereon founded, amounted to a breach of trust in which all the defendants are implicated, and authorized the complainant as the injured *cestui que trust* to come into equity and assert his right to one half the money called for by the notes and judgments. The object of the bill is, to secure a trust fund in the hands of the several defendants, who, by their participation with the trustee, in a breach of trust, had acquired possession of portions of the trust fund.—Eldridge v. Turner, 11 Ala. R. 1056 ; May v. Nabors, 6 Ala. 24 ; Lucas v. Kernodle, 2 Ala. 199 ; Collyer on Partnership §§ 179 to 185 ; Crawshay v. Collins, 15 Ves. R. 226.

2. The cases from the Alabama Reports above cited conclusively prove, that even if Halstead had transferred the legal title to the whole of the notes to his co-defendants, such transfer would have conveyed to them only " the beneficial interest in that part which belonged to the assignor ; and as to the residue, the assignee, who stands in the shoes of the assignor, will be a trustee for those who are beneficially entitled to it ;" and that " the assignee of a note, for valuable consideration and without notice, was affected by a latent equity subsisting between the parties."—2 Ala. R. 202. But Halstead never did transfer the legal interest in the notes to any person, nor did the complainant.—6 Ala. 26.

3. The foregoing authorities also prove that, inasmuch as the only interest the co-defendants of Halstead can pretend to have, is a mere equitable interest, their equity is *younger* than complainant's, and inferior in every point of view to it, at least to the extent of one half the whole fund.—See also Donelson v. Posey, 13 Ala. R. 752, 771 ; Felder v. Davis, 17 Ala. 418 ; Gaines v. Chew, 2 How. (N. Y.) R. 619.

The notes are not the trust fund. The notes are not the debt, but the mere evidence of the debt. The debt is the trust fund. This debt is but one debt, although evidenced by several notes. And this debt is the property of the partners, created for land sold by them. Each of the co-defendants of Halstead asserts a claim to a part of this one debt, due for the partnership land and mills ; and each says he derived his claim from Hal-

stead, who, as the partner of the complainant, had the right to sell and transfer this one debt. And it is apparent from the allegations of the bill, that Halstead is not only guilty of a mere breach of trust, but of a fraud towards his partner, (Shepard,) and that each of his co-defendants participated in that fraud.

4. The bill is not multifarious. It is now well settled, that, when different defendants claim different and separate parts of the property sought to be recovered, and the bill shows that all of them claim the same title which the complainant asserts, they may all be joined in one bill, because, having the same title asserted against them, they may all unite upon one common ground of defence. In Gaines & Wife v. Chew, 2 Howard's R. 619, all the defendants claimed the same title which the complainant asserted, to-wit: the title of Clarke, the ancestor of Mrs. Gaines ; they had acquired their titles at different times, but from the same source ; and the bill was held not to be multifarious. The case of Brinkerhoof v. Brown, 6 Johns. Ch. 139, is to the same effect. In Felder v. Davis, 17 Ala. 418, the bill was held multifarious, because it showed that the several defendants derived their titles at different times, by distinct acts of trespass or tort, amounting to a conversion by one who, as the bill showed, had no title ; therefore, they did not claim the title of complainant according to the allegations, for the husband of Mrs. Felder was not the trustee, and could not convey her title. The court admit that, if the bill had shown that the defendants all claimed the same title asserted by complainant, it would have been multifarious; but, as it showed that they derived title from a different source, and from one who might have claimed adversely to the complainant's title, it was multifarious, because a mere equitable title alone would not authorize the joining of different defendants, who did not claim in connection with each other, and who, according to the bill, did not have the title asserted by the complainant. This decision takes the correct distinction.

5. Even if it were conceded, that one partner in such a partnership as is shown in this case (to-wit : a partnership for sawing and selling lumber and carrying on a mill owned by the firm) has power to make a valid sale of a debt due the firm, to a *bona fide* purchaser for valuable consideration, without notice of

the rights or interests of the other partner; still, the complainant in this case is entitled to the decree rendered in his favor upon the pleadings and proof, because the bill and answers and proof clearly show that no one of the defendants is a *bona fide* purchaser for valuable consideration and without notice.—Galway v. Mathew, 10 East's R. 264, cited and approved, 2 Ala. 511; Pierce v. Pass, 1 Por. R. 232; Nolen v. The Heirs of Gwynn, 16 Ala. 728, defining a *bona fide* purchaser, &c.; 16 Johns. R. 34; Jewett v. Parmer, 7 Johns. Ch. R. 65, which shows that the answers of the defendants in this case do not even properly set up the defence of *bona fide* purchaser without notice; Bailey v. Wilson, 1 Dev. & Batt. Eq. R. 187; Saltmarsh v. Tuthill, 13 Ala. 407.

6. But whatever may be the law elsewhere, or whatever may be the law here as to the power of one partner in "a partnership in trade"—a mercantile partnership—by a sale of a debt due the firm, to bind the firm, (especially if the sale is in payment of a partnership debt,) it is settled as law in this State, that one partner in such a partnership as is shown in this case cannot bind his co-partner, without his consent, by exchanging the debts due the firm for his own private debt, nor by shaving off the firm debts at a discount of more than twenty per cent.; for this violates the implied obligation of partners to use the joint property for the benefit of all.—15 Ves. R. 226; Cocke v. B'k Mobile, 3 Ala. 175; Krebs v. O'Grady, June Term, 1853, by Judge Goldthwaite.

The power of one partner to bind another without his consent, is not as much favored in Alabama as in England, but is more restricted. "Partners are not liable for each other's acts, to a greater extent than they appear by their general course of dealing to have authorized."—Catlin v. Gilder, 3 Ala. 536; Mauldin v. Br. Bank Mobile, 2 Ala. 512, 513; Rolston v. Click, 1 Stew. Rep. 526; Pierce v. Pass, 1 Por. R. 232.

The law itself makes a distinction between the tangible property or effects of a firm and debts due to the firm. It allows a creditor of one partner to execute and sell that partner's interest in the former; but will not allow him to attach or sell by garnishment or other process at law, that partner's interest in the latter—that is, in the debts due the firm.—Winston v. Ewing, 1 Ala. 129. The reason given for not allowing the interest

of one partner in a debt due to the firm to be reached by garnishment at the suit of the creditor of that partner, is, that "the judgment against the garnishee, if acquiesced in, changes the right of property, and divests the co-partner's title to the property attached."—Winston v. Ewing, 1 Ala. 129.

7. The principle settled in Gallway v. Mathew & Smithson, 10 East's R. 264, sustains the decree fully in this case, especially as against Ashley. For it is proved expressly by Laird B. Fleming that, in February, 1841, (pages 65 and 66,) and before Ashley bought the note at the heavy discount, he (Ashley) heard from Halstead a distinct admission of Shepard's interest in the note, &c. &c., and it clearly appears that he can take no higher ground than that he traded for the note on the assurance of Halstead given at the time of the trade. And these representations or declarations of Halstead cannot avail him, for they are not evidence against Shepard, to deprive Shepard of his right to the note or a moiety of it.—Scott v. Danby, 12 Ala. R. 714. The *onus probandi* of the assent or authority of the injured partner (Shepard) is on the defendants.—1 Port. 232, *supra;* 1 Stew. 526, *supra.*

8. If Ashley has any equity at all equal to the legal and equitable right of complainant, or which can be sustained against complainant, it is only a claim to be protected to the extent of the money actually paid by him before he had notice that complainant would assert his rights. He cannot be allowed to retain any profit; protection is all he can ask, to the extent before indicated.—Houston v. Crutchfield, 22 Ala. But the true rule is, to hold him accountable as a trustee for the injured partner, without any regard to what he paid out.

The answer of Ashley is not a denial of notice of Shepard's interest in the notes.—Bailey v. Wilson, 1 Dev. & Batt. Eq. R. 187. But even if it be construed as a denial of notice, the deposition of Laird B. Fleming, (pages 65 and 66,) corroborated as it is by the note as well as by other circumstances disclosed by the answers and proof, is sufficient to turn the scale in favor of complainant.—Eldridge v. Turner, 11 Ala. 1057 ; Gunn v. Brantley, 21 Ala. R.; May v. Nabors, 6 Ala. 26.

GIBBONS, J.—A demurrer was filed to the bill in the present case for multifariousness, and that constitutes the first ques-

tion presented for our decision. It is not improper to premise that, in determining whether the demurrer is sustainable or not, we can look alone to the bill, and not to the answers of the several defendants, or the proofs in the cause.

It is unquestionably true that it is not competent for a party to join improperly in one bill distinct and independent matters, and thereby confound them; " as for example, the uniting in one bill of several matters perfectly distinct and unconnected against one defendant, or the demand of several matters of a distinct and independent nature against several defendants in the same bill."—Story's Equity Pl. § 271. But on the other hand, " a bill is not to be treated as multifarious, because it joins two good causes of complaint growing out of the same transaction, where all the defendants are interested in the same claim of right, and where the relief asked for in relation to each is of the same general character. Neither will a bill be deemed multifarious where it states a right to an account from A and B, against whom it has one remedy which it seeks to enforce, and also claims a lien against A, for what is due, and seeks that separate remedy against him; for the plaintiff may well, in such a bill, entitle himself to each. Indeed, the objection of multifariousness, and the circumstances under which it will be allowed to prevail or not, is, in many cases, as we shall hereafter see, a matter of discretion, and no general rule can be laid down on the subject."—*Ib.* § 284. The counsel for the plaintiff in error, amongst other authorities to this point, has cited the cases of Meachem v. Williams, 9 Ala. 482, and Felder *et al.* v. Davis *et al.,* 17 Ala. 418. In this latter case, Chief Justice Dargan, in commenting upon the authorities, and making a kind of summary of them, says : " Without examining in detail all the cases referred to by counsel, we deem it sufficient to say, that they show either that the defendants claimed the title asserted by the complainant, or that they claimed to derive from the same source, either mediately or immediately, from which the complainant derived his; the same fact or circumstance was alleged which rendered the title of the defendants invalid, which fact or circumstance, being the common ground of defence to all, became the connecting link that bound them all together.— Where the defence of all the defendants centers in the point in issue, they may all be joined in one suit, notwithstanding they

may separately possess distinct parcels of the property sought to be recovered.''

The facts of the case in which the above language was employed, were as follows : One B. Davis conveyed to one James Davis certain negroes, in trust for his daughter, Elizabeth Felder, the wife of B. B. Felder. The negroes went into the possession and control of the wife of Felder and of the trustee, Davis. Afterwards the trustee, becoming embarrassed, left the country, and the slaves went into the possession and control of the husband, B. B. Felder, who sold them as his own property to different individuals, and at different times, without the slightest regard to the fact that they were trust property, or that the legal title was in the trustee who had left the country. A bill filed by the wife and children, the *cestuis que trust* under the trust deed, against all the parties jointly having the several negroes, the trust property, and praying that the said negroes be delivered up to them, or to another trustee to be appointed, was held multifarious. This case we consider the most direct authority produced by the plaintiff in error in support of the demurrer. It is useless to deny that there is a striking analogy between the facts of that case and the case at bar. We think, however, that a clear distinction may be perceived between the facts of the two cases. The defendants in that case did not claim, or pretend to claim, the title under which the plaintiffs sought to recover the property. Every act of sale on the part of Felder, the husband, was a distinct trespass, without any pretence that he was acting in obedience to or passing the title under which the complainants sought to recover the property.

One of the tests by which to show that the bill is not multifarious is, that the several defendants claim the same title as that set up by the complainant in his bill.

In the bill before us, it is shown that the defendants claim that portion of the notes which is claimed by the complainant, by the same title as the complainant himself. Halstead, the partner of the complainant, is represented to have conveyed away these notes, not by a title different from his, but by the same title ; and the allegation is, that he did so without authority from the complainant, and in fraud of his rights. This distinction between the facts of this case and those of the case cited, we consider sufficiently marked to take it from its controlling influence as an authority.

There are in the present case, in our opinion, a number of circumstances in the facts presented by the bill, to free it from the objection of multifariousness. In the first place, the complainant and the defendants, Ashley, McCreary and Strickland, claim the one half of the notes, as above remarked, by a common title ; secondly, the defence of the defendants is, in one aspect of the case, a common defence, viz., the authority of the said Halstead to sell and dispose of the half of the notes owned by the complainant, and this is said to be another test by which a bill is determined not to be liable to the objection of multifariousness ; thirdly, in the account to be taken before the master, to ascertain the extent of the interest of the said Halstead in the notes, as that is shown by the bill to be in some measure dependent upon the state of the accounts between the parties, the defendants stand upon one common ground, and their defence is in this aspect also identical. Besides, the bill is filed for a discovery, as well as for an account and relief. It does not show on its face distinct and separate transactions, in so plain and distinct a manner as that this court can say that the interests of the several defendants, represented as claiming the notes, are separate and distinct from each other. On the contrary, we think the legitimate inference to be drawn from the language of the bill is, that the three defendants above named are all holding a joint interest in the papers, or acting with a common intent with Halstead to defeat the complainant in the recovery of any portion of either of the notes. The bill does not pretend to disclose which note was passed to either of the defendants, or the extent of the interest which they set up in the papers, and calls upon them to disclose the facts to the court. A bill so framed, with facts such as are alleged in the bill before us, we do not consider obnoxious to the objection of multifariousness, and the court below committed no error in overruling the demurrer.

Upon the merits of the case, on the final hearing, we have but little difficulty in affirming the decree of the Chancellor. So far as respects the case made by McCreary and Strickland, there can be no doubt. Their answers to the bill, concurring with the answer of Halstead, show that they respectively acquired the interest which they claim in the note or judgment in consideration of certain individual debts of Halstead owing to them be-

ing given up to said Halstead in payment. No principle is better settled in our law, than that one partner cannot dispose of the property or assets of the partnership in payment of his own individual debts. Such transfers of property could not prevent the recovery of it by suit in the name of the partnership; and in a court of equity, the most the purchaser could insist upon would be, the extent of the interest of the partner of whom he had made the purchase. As these defendants acquired their interest in the note which they claim by a transfer from Halstead, whilst the face of the paper gave them notice of the original proprietary interest of the complainant, and taking it upon the faith of Halstead alone, as to his authority to pass the whole title, and in payment of individual debts of Halstead, they must be considered as holding it subject to the interest of the complainant. In a court of equity, Halstead could pass so much of the interest in the paper as he actually owned, and no more.

But the claim set up by Ashley stands upon somewhat different grounds. He claims to have paid cash for the note which he holds, and denies, as his counsel insists, that he had any notice of the rights of the complainant. Waiving the consideration of the question arising out of the rate of discount at which he acquired the paper, it satisfactorily appears that he purchased the note after its maturity, and while in the hands of the attorney for suit.

He states in his answer, that, " at the time he so purchased said note of said Halstead, he was informed and believed that said complainant had received his full share and portion of the partnership effects, and that upon a fair accounting between said Halstead & Shepard, said Halstead would owe Shepard nothing; and he also charges that he then believed, and now believes, that the said Halstead, as one of the firm, had full right, power and authority to assign, transfer and deliver said note to him."

Here is a virtual admission on the part of Ashley, that he was aware of the interest of the complainant in the note, but dealt with Halstead upon his representation as to the state of the accounts between him and the complainant. But the testimony of the witness, Fleming, proves, beyond all doubt, that, even according to the representations of Halstead, made in

Ashley's presence before he made the purchase of the note, he knew that the complainant had an interest in the paper, and that he was then controlling it for himself. He must be held, therefore, to have purchased the note after its maturity, and with notice that the complainant had a claim to it, predicated upon the partnership accounts between himself and Halstead. He cannot complain of this, because he says he purchased the note upon this precise hypothesis, that upon a fair accounting of the partners together, the said complainant would have no interest in the note, as he had received from the partnership all that he was entitled to. If the faith which he placed in the representations of Halstead, at the time he made the purchase of the note, has proved to be misplaced, he has no one to blame but himself, as he was advised on a former occasion of a contrary state of facts by Halstead himself.

But it is insisted on the part of Ashley, that Halstead had the power, from his position as partner under the circumstances, the partnership being yet undissolved, to sell the notes, and pass the entire title to the purchaser, whether the purchaser had notice or not of the actual interest of the complainant. In this we cannot agree with the counsel. In ordinary partnerships, particularly those of a mercantile character, it is undoubtedly true, that, while the partnership is subsisting, one partner, acting within the scope of the ordinary business of the firm, has the right to sell and dispose of the property of the firm to the extent of the entire stock; so he would have the same right to dispose of the property for the purpose of paying the debts of the firm. But, whilst this is true, on the other hand one partner has no right to dispose of the partnership property, except within the scope of the partnership business. " There is an implied obligation among partners to use the property for the benefit of those whose property it is."—Collyer on Part. § 179. If, therefore, one partner undertakes to dispose of the partnership effects to the injury and wrong of the other partners, equity will interpose to give them relief; and if the purchasers of such effects take them with notice of such fraudulent intent on the part of the partner making the sale, they will be considered as parties to the fraud, and liable in equity with the fraudulent partner to refund to the remaining partners. The bill, it is true, shows that the partnership had never been formally dissolved;

yet it appears by the bill that it had ceased the business in which it was engaged in its formation, and had, as a firm, no active business whatever, except to wind up its affairs. The stock in trade of the partnership had been sold out by the consent of both partners; its business brought to a close, and the effects of the firm reduced to the shape of the two notes described in the bill. It is not shown that it was necessary to sell this note to Ashley for the purpose of paying partnership debts, nor does it appear that the firm was in debt at all.

The bill, answer and proof upon this subject, we think, establish the fact that it was the intention of Halstead, in disposing of the paper in the way he did to Ashley, to deprive the complainant wrongfully, if not fraudulently, of his rights therein; and further, that Ashley, if not cognizant of the intention of Halstead in thus disposing of the note, took it with notice of the interest and rights of the complainant, and is therefore in equity liable, the said Halstead being insolvent, to respond to the said complainant to the extent of his interest in the note.

The only remaining question presented by the record for our revision is, the assignment of error that the master, in taking the account, used the answer of Halstead as evidence against the other defendants. In thus using the answer of Halstead by the master there was no error of which the defendants, Ashley, McCreary and Strickland, can complain. That the answer of Halstead, on the subject of the accounts between him and the complainant, his co-partner, under the general rule, is incompetent evidence as against the other defendants, there can be no doubt; and if it appeared that the defendants had received any injury from this error, or if there was any room for the presumption that they could have received any injury, we should undoubtedly be compelled to reverse the case. But such is not the fact. The answer of Halstead is adopted by the master as the basis of his report, so far as respects the state of the accounts between him and the complainant. By this answer it appears, that the complainant is indebted to him in the sum of $139 99, that is, he is entitled to that much more in the notes than the complainant. Now suppose the answer of Halstead is excluded as evidence before the master, and he is compelled to make up his report from the other evidence in the cause; how then would it have stood? Each of the answers of the several

defendants admits the existence of the partnership, and that the papers in question were partnership papers. The partnership, then, being admitted, the presumption of law arising upon that admission is, that it is an equal partnership, and consequently the interest of the partners is equal in the property. This must necessarily have been the report of the master, in the absence of the answer of Halstead. Inasmuch, therefore, as the error committed by the master operates in favor of the defendants, instead of against them, we could not, as above remarked, reverse the cause for that reason.

Our conclusion is, that we find no error in the record of which the plaintiffs in error can complain, and the decree of the Chancellor is consequently in all things affirmed.