13 So.2d 881

### McCRARY v. LATHAM.

#### 7 Div. 736.

Supreme Court of Alabama.

June 5, 1943.

Hardegree & Dempsey, of Ashland, and L. H. Ellis, of Columbiana, for appellant.

Pruet & Glass, of Ashland, for appellee.

LIVINGSTON, Justice.

The suit is styled I. H. McCrary, an individual, formerly doing business under the firm name and style of Lineville Mercantile Company, versus J. A. Latham. At the time of the transactions here involved, the Lineville Mercantile Company was a partnership, composed of I. H. McCrary and J. H. Ingram, Jr. Plaintiff sues on the common counts as for merchandise, goods and chattels sold; open account, stated account, and for money had and received, and the amount claimed is $115.

The bill of exceptions recites, "It was admitted by the defendant in open court that, subject to defendant's pleas of set-off and recoupment, the defendant owed plaintiff the sum of one hundred and fifteen dollars, with interest from February 20, 1937, as set out in plaintiff's complaint." The admitted indebtedness of $115 was on account due by defendant to the Lineville Mercantile Company, and no point is made as to the right of the plaintiff, as an individual, to maintain an action on it.

Defendant interposed the following pleas:

"4th. The defendant as a defense to the action of the plaintiff saith that at the time said action was commenced the plaintiff was indebted to him in the sum of $502.40, wherein the defendant on the 10th day of March, 1936, purchased from the plaintiff twenty tons or 200 bags of nitrate of soda at $33.00 a ton and paid for it by executing to the plaintiff his note in the sum of $500.00, said note being a negotiable paper and was transferred to the Lineville National Bank of Lineville, Alabama before maturity, and which this defendant has been forced to pay in full, and paying the balance on said date, and that the plaintiff was to deliver to the defendant said nitrate of soda on his orders during the spring of 1936; that thereafter and during the month of April, 1936, the plaintiff delivered to the defendant forty-three bags of this nitrate of soda leaving a balance of 152 bags undelivered to defendant; that notwithstanding the fact that the defendant had issued orders and demanded the delivery of the nitrate of soda, the plaintiff has refused to deliver same, which the defendant hereby offers to set off against the demands of the plaintiff, and he claims judgment for the excess.

"5th. For further plea and answer to the complaint, the defendant says that the plaintiff at the time said action was commenced was indebted to him in the sum of $502.40, due by a promissory note which he executed to the plaintiff for the purchase price of nitrate of soda to be delivered to him in the future, said note being executed on the 10th day of March 1936 and payable to this plaintiff; and the defendant avers that this note was a negotiable instrument and that it was given for the purchase price of nitrate of soda which he never received, and that the plaintiff transferred said note to the Lineville National Bank, of Lineville, Alabama, a corporation, before maturity and received the proceeds of said note, and notwithstanding the fact that the defendant had never received said nitrate of soda the bank aforesaid was an innocent purchaser for value without notice and that this defendant has paid said note in full and has same in his possession, which he hereby offers to set off against the demands of the plaintiff, and he claims judgment for the excess."

The trial court gave the general charge for the defendant under plea five, and the jury returned a verdict for defendant for the sum of $521.91.

The controversy hinges on the question as to whether J. H. Ingram, Jr., admittedly a partner of the firm operating under the style and name of the Lineville Mercantile Company, was acting for the firm and took defendant's note in part payment for fertilizer sold by the partnership to defendant, or borrowed defendant's note in his individual capacity for the purpose of raising money for himself individually.

At the time the note was executed and delivered Ingram was the manager of the Lineville Mercantile Company, and his authority to sell fertilizer for the partnership is not questioned.

The defendant testified as follows:

"I live six miles northeast of Lineville and lived there in the spring of 1936; I

know J. H. Ingram, Jr., and knew him at that time; I knew I. H. McCrary at that time; Mr. McCrary and J. H. Ingram, Jr., were in business in Lineville in the spring of 1936, and operated under the name of Lineville Mercantile Company, and were handling fertilizer and nitrate of soda. I gave a note of contract to buy nitrate of soda from them at that time. Mr. Ingram came out to my farm and sold me twenty tons of nitrate of soda, two hundred sacks at $33.00 per ton, and I executed a note for $500.00 and paid him $160.00 in cash, and in that way I bought twenty tons of nitrate of soda from him. I got forty-eight sacks and that is all the nitrate of soda I ever got delivered; we have an order here for 150 sacks, he was to give me an order for the other fifty when he got some more soda and I failed to get it. I failed to get the fertilizer. The day the note was executed he gave me an order for 150 sacks of the soda and in a few days he gave me this other order. I actually got, I believe, forty-three sacks or forty-eight sacks; I got forty-three sacks, and then I got five sacks, making a total of forty-eight sacks; really I got ten 100 pound sacks, which would have been the same as five 200 pound sacks, so I really got forty-three 200 pound sacks and ten 100 pound sacks, which makes a total of forty-eight 200 pound sacks, and that is all I ever got. When he gave me the order for 150 sacks of 200 pounds, they had a car of fertilizer in the warehouse and he was going to get other cars of fertilizer the next week, and I did not need all the fertilizer at that time, and he was going to give me an order at a deferred date when the soda was shipped. I called for the remainder of the fertilizer called for by these orders but did not get it. I called for the other 150 sacks, the balance of the two hundred sacks I bought, but did not get it. The note I gave Mr. Ingram was payable to the Lineville Mercantile Company. Nothing was said by Mr. Ingram to me about me putting up some money, or any part of this money for him to pay his part of the contribution on the partnership. I was not familiar with the transaction between the partners to that firm and I was not a member of that firm; I was not familiar with the transactions between the individuals of the firm; the note I executed I found at the Lineville National Bank, and paid it and the interest on it. I do not know where this first original note is, that is, the original note I gave for the fertilizer; I have searched for it in the places where I usually keep papers of that sort and have not been able to find it. The original note provided for eight percent. interest from date; I paid off that note with interest at eight percent. from date."

J. H. Ingram, Sr., a witness for defendant, testified:

"Throughout 1936 I was engaged in the banking business in Lineville; the Lineville National Bank was the bank in which I did business; my son, J. H. Ingram, Jr., was manager of the Lineville Mercantile Company at Lineville, Alabama; I understood that as such he was selling fertilizer from March 16, 1936. I discounted a note given by J. A. Latham, the defendant in this case, and the proceeds of said note were credited to the Lineville Mercantile Company. The proceeds of this note were five hundred dollars, and, as stated, was deposited in the Lineville National Bank to the credit of Lineville Mercantile Company; it went in as a deposit and was checked out by the Lineville Mercantile Company in the usual course of business. I purchased that note or discounted it before it became due and the proceeds were deposited on the 16th day of March, 1936; I do not have with me the records showing the date of the note and I do not remember exactly when the note was due; it was not due when I purchased it and to the best of my recollection it was due in July of that year, but I do not have the records with me; I purchased the note on the 16th day of March, 1936, the day it was given. Mr. Latham paid the bank that money; he renewed it and later paid it off; he renewed the note from time to time and then paid it off; at the time I purchased the note I had no notice of any defense to it and it was purchased in due course. * * *

"I learned from J. H. Ingram, Jr., while acting as manager of Lineville Mercantile Company that it was given for fertilizer."

The two orders for the delivery of fertilizer, signed "Lineville Mercantile Company, by J. H. Ingram, Jr.," were introduced in evidence.

For the plaintiff, J. H. Ingram, Jr., testified:

"My name is J. H. Ingram, Jr., and in 1935 and 1936, I was a member of the firm of Lineville Mercantile Company of Lineville, Alabama, which was a partnership. Mr. I. H. McCrary and I composed the partnership; I remember a transaction I had with Mr. Latham, the defendant, about

a five hundred dollar note; he did give me a note but the note was payable to me and was not payable to the Lineville Mercantile Company; it was payable to John H. Ingram, Jr., I needed to raise some money and I went out to see Mr. Latham and told him that I needed some money and he gave me a note for five hundred dollars; my best recollection is that I told him I needed the money to put it in the mercantile business; in the conversation we had when the note was given I told him that and we sat and talked for thirty minutes about it; he signed the note. When he gave me the note something was said about giving him a fertilizer order to secure him for the note, and I told Mr. Latham I would give him a fertilizer (order) to secure the note and I made out that order for the fertilizer, which order is signed by Lineville Mercantile Company, but the note was made to me. The signature on that order dated March 10th, 1936 for 150 bags of nitrate of soda is in my hand writing, and I notice there where he finally got forty-three sacks on that order. I think that order was given on the same day the note was signed, but I would not be positive about that. My best recollection is the note and order were given on the same day. As stated, I asked him to sign a five hundred dollar note payable to me and told him to secure that I would give him a Lineville Mercantile Company order for the nitrate of soda. My recollection is I told him I was borrowing the money personally to put in the Lineville Mercantile Company; at that time we were raising some additional money; I had not gotten the money and that is what I was getting this money for was to put in the business and my recollection is I explained that to Mr. Latham; after I got the note from Mr. Latham I negotiated it at the bank and I deposited the $500 which I received on the note to the account of Lineville Mercantile Company; that was done at the Lineville National Bank. * * *

"As I remember it, we were going to raise about $750.00 each and put in the partnership and Mr. McCrary had already put up his part and I put in the proceeds of that note as part payment for my part. * *

"As I stated while ago I went out and borrowed that money from him and he gave the note direct to me. I was going to discount the note at the bank, and that is when I gave him a ticket, and I told him I would give him an order for the soda, and I did give him that order for 150 sacks of soda and that is all there was to it."

"When this note was executed we were going to get in some fertilizer, but we anticipated selling it. That would be a little early at that time of the year to begin selling the fertilizer; the only kind you can sell at that time is soda; we were selling soda about that time of the year to start putting under oats; I went out to see Mr. Latham on his farm and if I remember correctly it was in the afternoon, but I would not say whether it was right about night. I probably talked to him about selling him some soda that day, but that was not what I went out there for. I told him I wanted to borrow some money and he did not tell me that he had it but he gave me his note instead. I did not ask him to go on my note but asked him for the money. He did not let me have $160.00 that I remember of; I have no recollection of him letting me have any $160.00 in money in the house that evening; I will say that if he did I do not remember it; I did not sell him any soda that afternoon. That order for 150 sacks of soda is not where I sold him the soda. I signed that order, if you will let me tell you. I did give him an order on Lineville Mercantile Company for them to deliver him this soda and I gave him that order at the time he gave me the note. If he gave me any money at that time I do not have any recollection of it at all. Later, in the name of the Lineville Mercantile Company I gave him an order for ten 100 pound sacks; he did not pay me for that soda; that was Lineville Mercantile soda; I can not say off hand how much soda I did deliver to him; I do not remember how much soda I did deliver to Mr. Latham; I never have paid him anything other than soda."

In the case of Cannon v. Lindsey, 85 Ala. 198, 3 So. 676, 677, 7 Am.St.Rep. 38, this court said:

"One member of a partnership, whether existing or dissolved, cannot appropriate the assets of the firm by transferring them in satisfaction of his individual debt due to such transferee, without the authority or consent of the other members of the firm. Such transaction is considered a fraud on the other partners, and the title to the joint fund or property is not divested in favor of the separate creditor, whether he knew it to be partnership property or not. 'In short', as said by Judge Story, in a leading case on this subject, 'his right depends, not upon his knowledge that it was partnership property, but upon the fact whether the other partners had assented to such disposition of it or not.' Rogers [& Sons] **v.**

Batchelor, 12 Pet. 221 [9 L.Ed. 1063]; Parsons on Partnership (2d Ed.) p. 113 note; Id. 430; Halstead v. Shepard, 23 Ala. 558, 572; Pierce v. Pass & Co., 1 Port. 232; Burwell v. Springfield, 15 Ala. 273; Nall v. McIntyre, 31 Ala. 532; Dob v. Halsey, 16 Johns. [N.Y.] 34 [8 Am.Dec. 293]; Gram v. Caldwell, 5 Cow. [N.Y.] 489; Evernghim v. Ensworth, 7 Wend. [N.Y.] 326; Fancher Bros. v. [Bibb] Furnace Co., 80 Ala. 481 [2 So. 268]."

The rule thus broadly stated in Cannon v. Lindsey, supra, while applicable to the facts of that case, seems to have been established by a dictum in the leading case of Rogers & Sons v. Batchelor, 12 Pet. 221, 9 L.Ed. 1063, and overlooks the distinction between the acts of one who undertakes to dispose of property in his possession without title or authority from the owner, and the acts of one who, having authority, is guilty of some fraud or abuse in the mode of exercising it. In the former case, the act is void and no title could pass regardless of whether the other party acted in good faith or had knowledge of the want of title or authority. In the latter case the principal is bound to the extent of the apparent authority of his agent, notwithstanding any violation of duty or right as between the principal and agent, unless the other party participated in, or knew of the agent's breach of duty. The distinction is elementary in the law of agency. Locke v. Lewis, 124 Mass. 1, 26 Am.Rep. 631.

In the instant case, plaintiff must establish not only that the transaction between the defendant and Ingram was a loan to Ingram, individually, but that defendant knew it to be such a loan. If the defendant thought that he was dealing with the partnership through Ingram, and his intentions were to deal with the partnership, it would make no difference as to the secret, unknown or uncommunicated intentions of Ingram, or that the note was made payable to J. H. Ingram, Jr. 47 Corpus Juris pages 864, 865, section 339.

Under the evidence, these questions were for the jury, and the trial court erred in giving the general charge for the defendant under plea 5.

Reversed and remanded.

GARDNER, C. J., and THOMAS and BROWN, JJ., concur.