N. ROGERS & SONS, PLAINTIFFS IN ERROR V. JAMES BATCHELOR AND OTHERS, ADMINISTRATORS OF ABEL H. BUCKHOLTS, DECEASED.

An action of debt was instituted in the district court of the United States, on an obligation under the hands and seals of two persons. The action was against one of the parties to the instrument. The laws of Mississippi allow an action on such an instrument to be maintained against one of the parties only.

The funds of a partnership cannot be rightfully applied by one of the partners to the discharge of his own separate pre-existing debts, without the express or implied assent of the other parties; and it makes no difference, in such a case, that the separate creditor had no knowledge at the time of the fact of the fund being partnership property.

Whatever acts are done by any partner, in regard to partnership property or contracts, beyond the scope and objects of the partnership; must, in general, to bind the partnership, be derived from some further authority express or implied, conferred upon such partner, beyond that resulting from his character as partner.

The authority of each partner to dispose of the partnership funds, strictly and rightfully extends only to the business and transactions of the partnership itself; and any disposition of those funds by any partner beyond such purpose, is an excess of his authority as partner; and a misappropriation of those funds for which the partner is responsible to the partnership: though in the case of bona fide purchasers, without notice, for a valuable consideration, the partnership may be bound by the acts of one partner.

If one partner write a letter in his own name to his creditor, referring to the concerns of the partnership, and his own private debts, to those to whom the letter is addressed; the letter not being written in the name of the firm; it cannot be presumed that the other partner had a knowledge of the contents of the letter, and sanctioned them. Unless some proof to this effect was given, the other partner ought not to be bound by the contents of the letter.

IN error from the district court of the United States for the District of Mississippi.

In the district court of Mississippi an action of debt was instituted on an obligation executed on the first day of January, 1824, by which John Richards & A. H. Buckholts promised, under their respective hands and seals, to pay to N. Rogers & Sons, on the first day of April, 1824, three thousand two hundred and eighty-eight dollars, with interest from the date.

The defendant, Abel H. Buckholts, pleaded payment, and there was a general replication. After a trial and verdict for the defendant, in 1833, and a new trial granted, the cause was again tried in February, 1836; the administrators of A. H. Buckholts having been

[Rogers v. Batchelor.]

brought in after his decease; and a verdict was again found for the defendant: the jury at the same time having certified, that the plaintiffs, N. Rogers & Sons, were indebted to the estate of A. H. Buckholts, the sum of one thousand eight hundred and twenty-six dollars.

A bill of exceptions was taken by the plaintiffs to the charge of the Court; and judgment having been rendered on the verdict for the defendants; the plaintiffs prosecuted this writ of error. The bill of exceptions stated, that on the trial of the cause the defendants set up offsets to the demand of the plaintiffs. They were contained in an account made up to April 1st, 1830; and show a balance due to John Richards & Co., which firm was composed of John Richards and, Abel H. Buckholts. The balance due was one thousand five hundred and forty-one dollars. The accounts credit N. Rogers & Sons, the plaintiffs, with the amount of the note for which the suit was instituted, and with interest on it for six years, amounting to four thousand eight hundred and sixty-six dollars; and charges several items as payments to the plaintiffs, with interest on the same, showing the balance of one thousand five hundred and forty-one dollars.

Two items on the debit side of the account were made the subject of controversy, viz.: a charge of one thousand four hundred and fifty dollars, received from Lambert & Brothers, on the 4th of September, 1825; and a charge of three thousand dollars, under date of January, 1827, for John Richards' acceptance of the draft of N. Rogers, &c.

The account was stated as follows:

Dr.        N. Rogers & Sons, in account current (account to April
    1st, 1830,) with John Richards & Co.                          Cr.

The debits, among others, were:

| | | |
|---|---|---|
| 1825. Sept. 4. To cash from Lambert & Bro's, | $1450.46 | |
| Interest on the same | 530.62 | |
| | | $1981.08 |
| 1827. To acceptances of your draft on John | | |
| Richards & Co. payable at 6 mo. | 3000 | |
| Interest, | 800 | |
| | | $3800 |

The credits were:

| | | |
|---|---|---|
| 1827. April 19. By amount of John Richards & A. H. | | |
| Buckholt's note due this day, | $3325.25 | |
| Interest on same, 6 years, | 1541.06 | |

In support of this set-off, the defendants relied upon the testimony of one Rowan, who testified that some time in the year 1830, he was requested by Buckholts to be present at a conversation he expected to have at his office, with a Mr. Rogers, (a member of the firm of Rogers & Sons, as he understands,) relative to their accounts, and requested him to note down and recollect the conversation; that some time after Rogers came into the office, and a conversation ensued relative to their accounts; that the accounts before them were accounts made out by Rogers & Sons, between themselves and Richards & Buckholts, and John Richards & Co. and John Richards, and Lambert & Brothers, in account with John Richards & Co. Richards' and Buckholts, and John Richards, and an account made out by Buckholts, between Richards & Buckholts, and Rogers & Sons: that in their conversation relative to those accounts, Buckholts asked Rogers if the several items charged in his account had not been received and Rogers admitted they had been; that among other items so admitted, was the item charged in the account of offsets, filed under the plea of payment of one thousand four hundred and fifty dollars and forty-six cents, and the item of three thousand dollars.

The witness stated, that in their conversation about the one thousand four hundred and fifty dollars and forty-six cents item, Rogers admitted that sum had been received by Rogers & Sons, from Lambert & Brothers, in New York, and was part of the proceeds of seventy-four bales of cotton, shipped by Richards & Buckholts to Lambert & Brothers. That very little was said about the item of three thousand dollars; the witness recollected nothing more but an admission that it had been received. That something was said between Buckholts and Rogers about the right to apply moneys to the payment of John Richards' private debts; Buckholts contending Rogers had no right to do so, and Rogers that he had: but which particular item of payment witness did not understand. This was all the evidence introduced by defendants in support of the above two items of one thousand four hundred and fifty dollars and forty cents, and three thousand dollars. The said witness further testified, that he had understood the said John Richards had once failed, before he went into partnership with the said Buckholts. No other witness was introduced on the part of the defendants. The defendants admitted, that in the account made out by Buckholts between Richards & Buckholts, and Rogers & Sons, abovementioned, about which the said conversation between Buckholts and Rogers took place; that the item of three

thousand dollars was charged by Buckholts, in his said account, as an item received upon a bill of exchange, drawn in 1825, by Rogers & Sons on John Richards alone.

The plaintiffs then introduced a letter from John Richards to them, dated Natchez, June 6th, 1825, of which the following are extracts:

"To-day we have amount of sales of all the cotton we own, (except half interest in seventy-eight bales gone to England, which was sold by Messrs. Lambert in New York, at twenty cents, subject to benefit of half profits, without being accountable for any loss;) which, although bought lately, nearly netted twenty per cent. Our profits on cotton will be from four to five thousand dollars; and our business is, I think, prospering. The following is about the payments we have left in the hands of Messrs. Lambert, Brothers & Co., to be divided between you and them:

| | | |
|---|---|---:|
| Part sales of seventy-eight bales of cotton, about | - - | $2800 |
| Foster & Steel's notes, | - - - - - - | 4250 |
| My three notes, - - - - - - - - | | 1500 |
| | | |
| This intended to pay my own debts, - - - | | $8550 |

On account of John Richards & Co.

| | | |
|---|---|---:|
| The half profits of seventy-eight bales of cotton, gone to England, which I hope may be - -. - - - | | $1500 |
| J. R. & Co.'s notes, due next winter, at New Orleans, | - | 1500- |
| | | |
| | | $3000 |

"This day, sent to New Orleans six hundred and fifty-four dollars and fifty-five cents, to purchase exchange on New York, which will be forwarded as soon as received, to go to the payment of J. R. & Co.'s debt to you and Messrs. Lambert, Brothers & Co. With these payments I hope you will be satisfied until next winter. I have hopes of selling my private residence, at a sacrifice of two thousand five hundred dollars, which will be sent to you as soon as realized. I have a prospect of getting for it nine thousand dollars."

The plaintiffs, by their attorney, requested the court to charge the jury: First, that the defendants are not entitled, upon the evidence before them, to the item of one thousand four hundred and fifty dol-

[Rogers v. Batchelor.]

lars and forty cents, as an offset to the plaintiff's claim. Second, that the defendants are not entitled, upon the evidence before the jury, to the item of three thousand dollars, as an offset. Which charge the court refused to give; and thereupon, the defendants requested the court to charge as follows: First, that if the jury believe the offset of one thousand four hundred and fifty dollars was the proceeds of cotton of Richards & Buckholts, or John Richards & Co., shipped on their joint accounts, then it is a legal offset to a joint debt; and cannot be applied to the individual debt of John Richards, without proof that Buckholts was himself consulted, and agreed to it. Second, that if the jury believed that the draft of three thousand dollars was paid by Richards & Buckholts, or John Richards & Co., or out of the effects of either of those firms, *with the knowledge* of Rogers & Sons, then, in law, it is a legal offset to the joint debt of said Richards & Buckholts, or John Richards & Co., and cannot be applied to the private debt of either partner, without the consent of the other partner. Third, that the letter of John Richards, read in this case, is not evidence against Buckholts; unless the jury believe that Buckholts knew of the letter, and sanctioned its contents; (which letter is the one beforementioned in this bill of exceptions.) Which charge the court gave as requested.

To which decision, in refusing to charge as requested by the plaintiffs, and in charging as requested by the defendants, the plaintiffs excepted. The defendants remitted five hundred and sixty dollars; part of the debt certified by the jury.

The case was argued by Mr. Butler, for the plaintiffs in error; and by Mr. Hoban and Mr. Key, for the defendants.

Mr. Butler, for the plaintiffs in error, stated that Mr. Richards before his partnership with Buckholts, became largely indebted to N. Rogers & Sons in the business of shipping cotton. Afterwards, in 1825, the firm of Richards & Co. shipped seventy-eight bales of cotton to Lambert & Brothers; and the proceeds of the shipments were, according to the directions of the shippers, paid over to the plaintiffs in error: and of this amount fourteen hundred dollars were, according to the directions of the letter from Richards, placed to the credit of Richards. The judge of the district court charged the jury, that unless Buckholts had been consulted about this application of the funds, and

[Rogers v. Batchelor.]

had assented to it, the appropriation could not be sustained. On whom does the burthen of proof lie, to show the other partner did not consent? It should fall upon the partner. After the property of a partnership is sold, one partner may take part of the proceeds of the sale to pay his debt; and the creditor to whom the payment is made may retain the money, if he does not know the partner had objected to the appropriation.

The instr"ctions given by the judge to the jury, were therefore erroneous. Cited Harrison v. Sterry, 5 Cranch, 289; Winship v. Jones, 5 Peters, 529; 13 East, 175.

As to the item of three thousand dollars, Mr. Butler contended that this grew out of a draft drawn by the plaintiffs on John Richards alone. John Richards accepted the bill, and it was paid when at maturity. The account charges this as "our acceptance;" but this was not the fact. The evidence shows that the bill was drawn on John Richards, and the drawers had no right to know it was paid out of the partnership funds. There is nothing to show they did know this. Cited 2 Starkie's Ev. 25–588; note; 9 John. Rep. 500; Walden v. Shelborne, 15 John. 409; 3 Pick. 5. The whole of the case depends on the good faith of the transaction. The judge did not leave the question of good faith to the jury; but laid down the proposition, that the fact of the partnership property having been taken to pay the acceptance, was sufficient to prevent the plaintiffs recovering.

The cases on which the counsel for the defendants rely are cases of guaranty.

There has been great neglect on the part of Mr. Buckholts in not having given notice that the acceptance of the draft on Richards was not to be charged to him. The transaction was in 1825; and there is no evidence that objection to the credit of the same to Richards alone, was made until long afterwards. All the cases which have been cited, are cases where objections were immediately made, and communicated.

In reference to the one thousand four hundred and fifty dollars, the credit must have been given in the books of the plaintiffs in error, in 1825; and no objection to this credit was made until 1830. Cited 7 Cranch, 147; 2 Barnwell & Alderson, 678.

Mr. Hoban and Mr. Key, for the defendant; said the question pre-

[Rogers v. Batchelor.]

sented in this case is, whether one partner has a right to pay his separate debts out of the partnership effects. The letter from Richards shows that he was using the partnership property for that purpose.

The charge of the court is, that one partner cannot appropriate the property of the partnership for such a purpose, without the approbation of his partner. Such an appropriation is, per se, fraudulent. If it is known to be partnership property, by the private creditor, it is fraudulent in him to receive it. 1 East, 51; 7 Wendell, 328. All this was matter for the jury; and they have passed upon it on two trials, and always in favour of the defendants.

The burthen of proof is altogether on the party who receives partnership property, for his own benefit; in a transaction with one partner only. Cited Colyer on Partnership, 279; Dobb v. Halsey, 16 John. Rep. 34; 1 Wendell, 531. In England it never was contended that partnership property could be taken to pay a partnership debt, without the knowledge and consent of the other partner, expressly given or well known. 6 Wendell, 551; 19 Jonn. 157; 5 Cowan, 489; 2 Caines' Rep. 246; 3 Wendell, 415.

Mr. Justice STORY delivered the opinion of the Court.

This cause comes before us on a writ of error to the district court of the district of Mississippi. The original action was debt; brought by the plaintiffs in error, (Rogers & Sons,) against Abel H. Buckholts, upon the following writing obligatory,—"Natchez, Mississippi, $3288 03. On the first day of April next, we promise to pay N. Rogers & Sons, or order, three thousand two hundred and eighty-eight dollars three cents, value received, with interest from date. Witness our hands and seals, this first day of January, 1824: Jno. Richards, [seal.] A. H. Buckholts, [seal.]" Upon such an instrument, by the laws of Mississippi, one of the parties may be sued alone; and accordingly, Richards was no party to the suit. Upon the plea of payment, issue was joined; and, pending the proceedings, Buckholts died, and his administrators were made parties; and upon the trial, a verdict was found for the defendants, for the sum of eighteen hundred and twenty-six dollars and seventy-four cents, being the balance due to them upon certain set-offs set up at the trial. A bill of exceptions was taken at the trial by the plaintiffs; and judgment having passed for the defendants, the present writ of error has been brought to revise that judgment.

By the bill of exceptions, it appears, that the defendants set up as a set-off, an account headed " Dr. Messrs. N. Rogers & Sons in account current to first of April, 1830, with John Richards & Co. Cr.," on the debit side of which account were the two following items, which constituted the grounds of the objections which have been made at the argument;—" To cash, $1450 46." " To our acceptance of your draft, payable at six months, $3000." To support their case, the defendants offered the testimony of one Rowan; who testified to a conversation had in his presence, in the year 1830, between Buckholts and one of the plaintiffs, relative to their accounts; that the accounts then before them were accounts made out by Rogers & Sons, between themselves and Richards & Buckholts, and John Richards & Co., and John Richards & Lambert & Brothers in account with John Richards & Co. Richards & Buckholts, and John Richards; and an account made out by Buckholts between Richards & Buckholts, and Rogers & Sons. In the conversation relative to these accounts, Buckholts asked Rogers if the several items charged in his account had not been received; and Rogers admitted they had been. Among other items so admitted, were the above items of fourteen hundred and fifty dollars forty-six cents, and three thousand dollars. In the conversation about the item of fourteen hundred and fifty dollars forty-six cents, Rogers admitted that sum had been received by Rogers & Sons, from Lambert and Brothers, in New York; and that it was part of the proceeds of seventy-four bales of cotton, shipped by Richards & Buckholts to Lambert & Brothers. Very little was said about the item of three thousand dollars. Something was said between Buckholts and Rogers, about the right to apply moneys to the payment of John Richards' private debts: Buckholts contending that he had no right so to do, and Rogers that he had; but which particular item of payment the witness did not understand. This was all the evidence of payment introduced by the defendants to support the above two items of fourteen hundred and fifty dollars forty-six cents; and three thousand dollars. The witness stated, that he had understood that John Richards had once failed, before he went into partnership with Buckholts. It was admitted by the defendants, that the item of three thousand dollars was for a bill of exchange, drawn in 1825 by Rogers & Sons on John Richards alone.

The plaintiffs then introduced a letter written by John Richards to the plaintiffs, dated at Natchez, June 6th, 1825, (and which is in

[Rogers v. Batchelor.]

the record,) containing statements relative to a shipment of seventy-eight bales of cotton, made to Lambert & Co. and to certain payments which, the letter says, "we have left in the hands of Messrs. Lambert, Brothers & Co., to be divided among you and them." It then enumerates eight thousand five hundred and fifty dollars, "intended to pay my own debts;" and on account of Richards & Co. three thousand dollars. It then adds, that the sum of six hundred and fifty-four dollars fifty-five cents had been that day sent to New Orleans to purchase exchange on New York, to be forwarded, and go to the payment of John Richards and Co.'s debt to plaintiffs, and Messrs. Lambert, Brothers & Co.

Upon this evidence, the plaintiffs requested the court to charge the jury, that the defendants were not entitled, upon the evidence before them, to the item of fourteen hundred and fifty dollars forty-six cents, as an offset to the plaintiffs' claim; and also that the defendants were not entitled, upon the evidence before the jury, to the item of the three thousand dollars, as an offset, which charge the court refused to give, and in our judgment, very properly refused to give, as it involved the determination of matter of fact, properly belonging to the province of the jury.

The defendants then requested the court to charge the jury as follows: "First, that if the jury believe the offset of fourteen hundred and fifty dollars was the proceeds of cotton of Richards & Buckholts, or John Richards & Co., shipped on their joint accounts, then it is a legal offset to a joint debt, and cannot be applied to an individual debt of John Richards, without proof that Buckholts was himself consulted, and agreed to it. Second, that if the jury believed that the draft of three thousand dollars was paid by Richards & Buckholts or John Richards & Co., or out of the effects of either of those firms, with the knowledge of Rogers & Sons, then in law it is a legal offset to the joint debt of the said Richards & Buckholts, or John Richards & Co., and cannot be applied to the private debt of either partner, without the consent of the other partner. Third, that the letter of John Richards, read in this case, is not evidence against Buckholts, unless the jury believe that Buckholts knew of the letter, and sanctioned its contents." The court gave the charge as requested: and the present bill of exceptions has brought before us, for consideration, the propriety of each of these instructions.

The first instruction raises these questions: whether the funds of a partnership can be rightfully applied by one partner to the dis-

**SUPREME COURT.**

charge of his own separate pre-existing debt, without the assent, express or implied, of the other partner; and whether it makes any difference, in such a case, that the separate creditor had no knowledge at the time of the fact of the fund being partnership property. We are of opinion in the negative, on both questions. The implied authority of each partner to dispose of the partnership funds strictly and rightfully extends only to the business and transactions of the partnership itself; and any disposition of those funds, by any partner, beyond such purposes, is an excess of his authority as partner, and a misappropriation of those funds, for which the partner is responsible to the partnership; though in the case of bona fide purchasers, without notice, for a valuable consideration, the partnership may be bound by such acts. Whatever acts, therefore, are done by any partner, in regard to partnership property or contracts, beyond the scope and objects of the partnership; must, in general, in order to bind the partnership, be derived from some further authority, express or implied, conferred upon such partner, beyond that resulting from his character as partner. Such is the general principle; and in our judgment, it is founded in good sense and reason. One man ought not to be permitted to dispose of the property, or to bind the rights of another, unless the latter has authorized the act. In the case of a partner paying his own separate debt out of the partnership funds, it is manifest that it is a violation of his duty and of the right of his partners, unless they have assented to it. The act is an illegal conversion of the funds; and the separate creditor can have no better title to the funds than the partner himself had.

Does it make any difference, that the separate creditor had no knowledge at the time, that there was a misappropriation of the partnership funds? We think not. If he had such knowledge, undoubtedly he would be guilty of gross fraud; not only in morals, but in law. That was expressly decided in Sheriff v. Wilks, 1 East, R. 48: and indeed seems too plain upon principle to admit of any serious doubt. But we do not think that such knowledge is an essential ingredient in such a case. The true question is, whether the title to the property has passed from the partnership to the separate creditor. If it has not, then the partnership may reassert their claim to it in the hands of such creditor. The case of Ridley v. Taylor, 13 East, R. 175, has been supposed to inculcate a different and more modified doctrine. But upon a close examination, it will be found to have turned upon its own peculiar circumstances. Lord Ellenborough, in

[Rogers v. Batchelor.]

that case, admitted that one partner could not pledge the partnership property for is own separate debt; and if he could not do such an act of a limited nature, it is somewhat difficult to see how he could do an act of a higher nature, and sell the property. And his judgment seems to have been greatly influenced by the consideration, that the creditor in that case might fairly presume that the partner was the real owner of the partnership security; and that there was an absence of all the evidence (which existed and might have been produced) to show that the other partner did not know, and had not authorized the act. If it had appeared from any evidence that the act was unknown to, or unauthorized by the other partners, it is very far from being clear, that the case could have been decided in favour of the separate creditor; for his lordship seems to have put the case upon the ground, that either actual covin in the creditor should be shown, or that there should be pregnant evidence, that the act was unauthorized by the other partners. The case of Green v. Draker, 2 Starkie's Rep. 347, before lord Ellenborough, seems to have proceeded upon the ground, that fraud, or knowledge by the separate creditor was not a necessary ingredient. In the recent case Ex parte Goulding, cited in Collyer on Partnership, 283, 284, the vice-chancellor, (Sir John Leach,) seems to have adopted the broad ground upon which we are disposed to place the doctrine. Upon the appeal, his decision was confirmed by lord Lyndhurst. Upon that occasion his lordship said; "No principle can be more clear, than that where a partner and a creditor enter into a contract on a separate account, the partner cannot pledge the partnership funds, or give the partnership acceptances in discharge of this contract, so as to bind the firm." There was no pretence in that case, of ai y fraud on the part of the separate creditor: and lord Lyndhurst seems to have put his judgment upon the ground, that unless the other partner assented to the transaction, he was not bound; and that it was the duty of the creditor to ascertain whether there was such assent or not.

The same question has been discussed in the American courts on various occasions. In Dob v. Halsey, 16 John. Rep. 34, it was held by the court, that one partner could not apply partnership property to the payment of his own separate debt, without the assent of the other partners. On that occasion, Mr. Chief Justice Spencer stated the difference between the decision in New York, and those in England, to be merely this: that in New York the court required the separate creditor who had obtained the partnership paper for the pri-

vate debt of one of the partners, to show the assent of the whole firm to be bound; and that in England, the burthen of proof was on the other partners to show their want of knowledge or dissent. The learned judge added: "I can perceive no substantial difference, whether the note of a firm be taken for a private debt of one of the partners by a separate creditor of a partner, pledging the security of the firm; and taking the property of the firm, upon a purchase of one of the partners, to pay his private debt. In both cases, the act is equally injurious to the other partners. It is taking their common property to pay a private debt of one of the partners." The same doctrine has been, on various occasions, fully recognised in the supreme court of the same state. And we need do no more than refer to one of the latest: the case of Evernghim v. Ensworth, 7 Wend. Rep. 326. Indeed, it had been fully considered long before, in Livingston v. Roosevelt, 4 John. Rep. 251.

It is true, that the precise point now before us, does not appear to have received any direct adjudication; for in all the cases above mentioned, there was a known application of the funds or securities of the partnership to the payment of the separate debt. But we think that the true principle to be extracted from the authorities is, that one partner cannot apply the partnership funds or securities to the discharge of his own private debt without their consent; and that without their consent their title to the property is not divested in favour of such separate creditor, whether he knew it to be partnership property or not. In short, his right depends, not upon his knowledge that it was partnership property, but upon the fact, whether the other partners had assented to such disposition of it or not.

If we are right in the preceding views, they completely dispose of the second instruction. The point there put involves the additional ingredient, that the separate debt and draft of Richards, for the three thousand dollars, was, with the knowledge of the plaintiffs, (Rogers & Sons,) paid out of the partnership funds; and if so, then, unless that payment was assented to by the other partner, it was clearly invalid, and not binding upon him. It is true, that the draft of three thousand dollars was drawn on Richards alone; and, therefore, it cannot be presumed that the plaintiffs had knowledge that it was accepted by the partnership, or paid out of the partnership funds. But the question was left, and properly left to the jury to say whether the plaintiffs had such knowledge; and if they had, unless the other partner consented, the payment would be a fraud upon the partnership.

[Rogers v. Batchelor.]

With the question, whether the jury have drawn a right conclusion, it is not for us to intermeddle. It was a matter fairly before them upon the evidence; and the decision upon matters of fact was their peculiar province.

The third instruction admits of no real controversy. The letter purports to be written by Richards alone, and not in the name of the firm, or by the orders of the firm. It embraces topics belonging to his own private affairs, as well as to those of the firm. Under such circumstances; not being written in the name of the firm; it cannot be presumed that the other partner had knowledge of its contents, and sanctioned them, unless some proof to that effect was offered to the jury. If the other partner did not know of the letter, or sanction its contents, it is plain that he ought not to be bound by them; and such was the instruction given to the jury.

Upon the whole, our opinion is, that the judgment of the court below ought to be affirmed, with six per cent. interest, and costs.

This cause came on to be heard on the transcript of the record from the district court of the United States for the district of Mississippi, and was argued by counsel. On consideration whereof, it is now here adjudged and ordered by this Court, that the judgment of the said district court in this cause be, and the same is hereby affirmed, with costs and damages, at the rate of six per centum per annum.