SAMUEL M. MECUTCHEN *vs.* JAMES KENNADY, who is impleaded with Isaac Tomlinson and Samuel C. Bell.

1. Where the property or the paper of a firm is taken in payment of the private debt of one of the partners, the law charges the creditor with a knowledge of the fraud, and imposes upon him the burthen of repelling that presumption.

4. When a note drawn by a partnership to a third party, and by him endorsed, is found in the hands of one of the partners before maturity, the presumption of law is that the note was made as accommodation paper, and is the property of the firm.

3. If such paper be delivered by one of the partners to his creditor in payment of his individual debt, the law will presume the transfer to be fraudulent, and will hold the creditor chargeable with a knowledge of the fraud.

4. If such paper has in fact been negotiated, and at the time of the delivery by the partner to his creditor was held by the partner as his individual property, the burthen of proving that fact is on the creditor.

This cause was heard upon the following case certified from the Camden Circuit Court for the advisory opinion of the Supreme Court.

This action was brought upon a promissory note for $287.62, dated the 14th day of February, 1855, payable sixty days after date, drawn by Tomlinson and Kennady to Samuel C. Bell, and by him endorsed. Judgment by default was entered against all the defendants, and execution issued, when the defendant, James Kennady, applied to the court, and procured the judgment to be opened and set aside, and admitted to defend, and execution stayed until further order of court, as *pro ut* the pleadings, judgment, and execution and rules entered in said cause.

Mecutchen v. Kennady.

On the trial of the cause before the jury, the plaintiff proved as follows :

By Jeremiah Seeds—I know the parties, and also Samuel C. Bell; I can't say that I know Kennady's handwriting—I think I do Tomlinson's [note shown]; the body of the note looks like Tomlinson's handwriting; I would not like to say as to the signature ; I was in partnership with Tomlinson in the milling business one year; I think in 1854, [admitted to have been from March 25th, 1853, to March 25th, 1854.] Mr. Kennady came in the year I left, for one year; I heard Kennady say they were in partnership in the mill, store, and farm.

On cross-examination, saith—I was in partnership with Tomlinson one year, and I believe we gave one note; we gave the note in bank ; each signed his own name to it; we so signed because it was to go in bank ; our partnership name was Seeds & Tomlinson.

By Samuel C. Bell—I know Mr. Tomlinson's handwriting [note shown]; the body of the note and signature are both in the handwriting of Tomlinson ; the endorsement, Samuel C. Bell, is my signature.

On cross-examination, says—I was not present when the note was drawn ; I don't recollect when I endorsed this note ; I did it in Medford bank ; it was some time in the early part of 1855, while they were in partnership ; Isaac Tomlinson gave me the note; he came to my place, and asked me to go to the bank and get the money on it, if I could ; I took it to the bank, and endorsed it in the bank; I left it in the bank; I was too late; the directors were coming away ; the officers told me it would probably be done the next discount day ; Tomlinson, when he told me to get the money, told me it was to pay into the firm— to pay a debt they owed Mr. Webb; I don't know all the men I saw at the bank ; I saw the officers; I gave them the note, and asked if it would be done ; they said they would try the next discount day ; I don't know if the note was done then ; I next saw it, if I recollect right, in

court; I heard from the note; I forget whether Mecutchen showed it to me or not; I do not recollect telling William Penn that I took this note to Mr. Tomlinson; I do not recollect anything that passed between us at Brown's corner.

In chief—I left the note at the bank; I did not take it back to Mr. Tomlinson.

Note read, and offered in evidence, *pro ut* the note.

On the trial before the jury, the defendant, James Kennady, proved as follows:

By William Penn—I went with Kennady to Mr. Mecutchen's, I think in June, 1856, [note shown]; I have seen that note before; Kennady asked Mecutchen if he would come over to a trial in Camden before Mr. Cassady, [examination before commissioner]; he said he thought he would; Kennady said to Mecutchen that the sheriff had been directed to make the money out of him (Kennady); Mecutchen said he did not know how the note came in the market; he received it from Tomlinson for work done by him for Tomlinson upon his (Tomlinson's) mill, and for Tomlinson's individual debt; he (Mecutchen) did not know Kennady in the transaction; Mr. Samuel C. Bell had a conversation with me; he said he took the note to Medford bank, and left it there; they refused to discount it for Tomlinson; they would not do it for Tomlinson, but if he (Bell) wanted the money, he could have it; he said he returned the note to Mr. Tomlinson, but he ought to have destroyed it; Tomlinson owns the mill.

On cross-examination, says—Mr. Bell and I were at the blacksmith's shop, Brown's corner; when we left, we were having high words, but not when this conversation took place.

By William P. Tatem—I had the execution in this case in my hands as sheriff; I received instruction to make this money out of Mr. Kennady; I don't recollect any reason given for these instructions.

A verdict was ordered by the court to be found for the

Mecutchen v. Kennady.

plaintiff for the amount of the note, protest and interest, subject to the opinion of the court upon a case certified to the Supreme Court. If the Supreme Court shall be of opinion that the defendant, James Kennady, is liable upon the aforesaid note of Tomlinson and Kennady, then the verdict is to be entered for the plaintiff as aforesaid, otherwise for the defendant.

Argued at June Term, 1858, before the CHIEF JUSTICE, and Justices OGDEN, HAINES and RYERSON.

*Voorhees*, for plaintiff.

The question is, whether Kennady is liable on this note as a partner. Tomlinson and Kennady were general partners in the mill, store and farm. By general rule, either partner has power to bind the firm by bill or note, or other negotiable paper. *Chitty on Bills* (ed. 1841) 39; *Story on Partnership*, § 102, *a; 1 Am. Lead Cases* (ed. 1852) 440.

If negotiable paper is given by one partner it will bind all, unless the title of the party seeking to charge a partnership may be impeached. 3 *Kent's Com.* 41; *Chitty on Bills* 41–3; *Collyer on Part.*, § 401 (ed. 1853.)

It was stated by Bell, on cross-examination, that when the note was drawn, it was said by Tomlinson that it was for the benefit of the firm.

If the note is negotiable through fraud of one partner, it is nevertheless binding on the firm in the hands of an endorser without notice of the fraud. *Collyer on Part.*, § 447; *Ridley* v. *Taylor*, 13 *East* 175.

*Dudley*, for defence.

There is no evidence that the note was *bona fide* drawn. The whole transaction shows a clear fraud. If the transfer to Bell and the endorsement by him was for value, after he returned it to Tomlinson, the latter could not issue it

to pay a private debt. *Story on Part.*, § 133 ; 3 *Kent's Com.* 43 ; *Rogers* v. *Batchelor*, 12 *Peters* 229 ; *Darling* v. *March*, 22 *Maine R.* 188 ; 3 *Pick.* 11 ; *Davenport* v. *Runlett*, 3 *N. H. R.* 386 ; *Dob* v. *Halsey*, 16 *Johns. R.* 36 ; *Laverty* v. *Burr*, 1 *Wend.* 529 ; *Williams* v. *Walbridge*, 3 *Wend.* 417 ; *Green* v. *Deakin*, 2 *Stark.* 307.

If an endorsed note is in the hands of the drawer, the presumption is, it was mere accommodation paper. The law will raise that presumption against a subsequent holder who receives it from the drawer. There is no presumption that the drawer holds it *bona fide* against the firm. *Stall* v. *Catskill Bank*, 18 *Wend.* 478 ; *Kemeys* v. *Richards*, 11 *Barb.* 312 ; 16 *Penn. St. R.* 399 ; *Bank* v. *Bowen*, 7 *Wend.* 158 ; *Sweetser* v. *French*, 2 *Cush.* 309.

*Carpenter*, on same side.

The note in this case is a partnership security, delivered to the plaintiff for a private debt.

As to power of partners to bind firm, cites *Story on Part.*, §§ 111, 123 ; *Collyer on Part.*, §§ 496–7, 501, and case there cited.

Where a partnership security is taken for the separate debt of one of the partners, it is conclusive evidence against the creditor, unless explained ; the burthen of proof is on the holder. *Collyer on Part.*, § 496 ; *Story on Part.*, § 133 ; 1 *Am. Lead. Cases* 300 (1*st ed.*)

The law is that the proof is in the creditor, if he takes the security under circumstances to put him on inquiry. If the note had been thrown into market and sold, or had been discounted without knowledge of the manner in which it was given, the firm would have been bound to pay it ; but there is a clear distinction between the use of a note for the purpose of being discounted, and to pay a precedent debt. *Rogers* v. *Batchelor*, 12 *Peters* 229 ; 16 *Johns. R.* 36 ; *Tanner* v. *Hall*, 1 *Penn. St. R.* 417 ; *Williams* v. *Walbridge*, 3 *Wend.* 417.

Aside from the general principle that the burthen of

proof is on the creditor, there is evidence in this case to show that the plaintiff took the note in bad faith.

*Browning*, in reply.

It is clear that the note was made originally to be discounted at bank for the benefit of the firm. The note was drawn for a lawful purpose, endorsed by Bell, and left at bank.

The note was passed to plaintiff by delivery; there was no endorsement at the time. Had the partnership name been endorsed, that would have been equivalent to a new note. Mecutchen did not know who wrote the note, or by whom it was signed, nor that Bell was accommodation endorser. The note had apparently been in existence some time, and had been endorsed by Bell.

The fraud must extend to creditor, otherwise he is *bona fide* holder.

If one partner sit down and draw note of firm to pay an individual debt, or endorses note with name of the firm, that is notice; but where the note is previously given by the firm, is endorsed, and is in the hands of one partner, it is no evidence of notice.

The case cited in *Collyer* 533 is still stronger, viz., that where a note is endorsed by the name of the firm, that is not notice to the creditor. The cases in this country are clearly contrary; the strongest case adverse is 11 *Barb.* 312; in that case the note was endorsed in the partnership name; it gave direct notice to the creditor. So in the case of *Williams* v. *Walbridge*, 3 *Wend.* 417, the note was made, procured to be endorsed, and handed over to the creditor.

In *Story on Part.*, §§ 128, 131, 132–3, the general principle is stated. It applies where partnership property is used with the knowledge of the creditor, or the name is used so as to give the creditor notice. 19 *Barb.* 326; 10 *Harris* 21; 15 *Georgia* 197, 252.

The opinion of the court was delivered by

The CHIEF JUSTICE. This action was brought upon a promissory note, drawn in the partnership name of Tomlinson & Kennady to Samuel C. Bell, and by him endorsed. Judgment by default was entered against the endorser, and against Tomlinson, one of the makers. Kennady the other maker, alone defends the action.

The evidence shows that, at the time of the transaction, Tomlinson and Kennady were partners in trade. The note was drawn by Tomlinson, one of the partners, in the partnership name, and, at his request, was endorsed by Bell, as a matter of accommodation. The note, thus endorsed, was offered at the Medford Bank for discount for the accommodation of the firm, but was not discounted. It was subsequently delivered to Mecutchen, the plaintiff, by Tomlinson, one of the partners, in payment of his individual debt due to Mecutchen, without the knowledge or consent of Kennady, the other partner.

The case presented is that of a partnership note made to a third party, and by him endorsed, and delivered by one of the partners to a creditor, in payment of his individual debt. The authority of the individual partner to bind the firm by the drawing or endorsing of negotiable paper extends only to the trade or business of the firm. Where such paper is in the hands of an innocent endorsee or *bona fide* holder, the law presumes that it was given for the benefit of the partnership, and the firm are held liable. *Story on Partnership* 102. And though such paper be negotiated by one partner in fraud of his co-partner, it is nevertheless binding on the firm in the hands of an endorsee without notice of the fraud. *Collyer on Part.*, § 447.

It is equally well settled, that where one partner employs the funds of the firm in payment of his individual debt, the creditor, knowing that fact, will be deemed to act in bad faith and in fraud of the partnership. And where the funds or the paper of the firm is taken in pay-

ment of the private debt of one of the partners, the law charges the creditor with a knowledge of the fraud, and imposes upon him the *onus* of repelling that presumption. And the rule is founded on the obvious truth that the employment of the partnership funds by one of the partners for his private benefit is a fraud upon the partnership, and the creditor participating in the transaction is a party to the fraud. These familiar principles are not drawn in question; and it is admitted that if the note in question had been made directly by one of the partners, in the name of the firm, to the plaintiff, in payment of his individual debt, the plaintiff could not recover. But it is sought to distinguish this case, and to take it out of the operation of the rule, on the ground that although it was a partnership note, given by one partner in payment of his individual debt, yet it was not drawn directly to the creditor, but had previously been drawn to a third party, and was by him endorsed, and may have been the individual property of the partner by whom it was transferred. It was not, therefore, necessarily the property of the firm, and the creditor is not chargeable with notice of that fact.

There is no proof that the note in question had ever been negotiated. It is in evidence that it was made and endorsed as mere accommodation paper, and was in the hands of the individual partner by whom it was drawn, and by whom and for whose individual benefit it was fraudulently transferred. Is the plaintiff who received the paper, not from the endorser, but directly from the partner, chargeable with knowledge of fraud?

As against the creditor, the presumption of law would be, that the note, in the hands of the partner, at least before maturity, was mere accommodation paper, endorsed for the benefit of the firm, and not the property of the individual partner. If the note was transferred to the plaintiff after maturity, he holds it subject to every defence which would be available against the partner from whom he received it.

If it be shown that the paper has been in the market, and has been once negotiated, the presumption might be, that it had been purchased by the individual partner, and was held by him as his private property.. But, in the absence of such proof, the note is presumed to be the property of the firm. It may be, it is true, the individual property of the partner, and that fact, if shown by the holder of the paper, will entitle him to recover. But the burthen of showing that fact ought, upon principle and on grounds of policy, to rest upon the plaintiff. The delivery of the partnership note by Tomlinson in payment of his own debt was a fraud upon his partner, and if Mecutchen is not chargeable with a direct and positive knowledge of the fraud, the circumstances were at least such as to put him on inquiry, and to throw upon him the burthen of proof as to the real nature of the transaction.

Where partnership property is transferred by a partner in payment of his individual debt without the consent of his copartner, it vests no property in the creditor, whether he knew it to be the property of the partnership or not. *Rogers v. Batchelor*, 12 *Peters* 221.

The case of *Ridley* v. *Taylor*, 13 *East* 175, is not recognized as law in this country, so far as it imposes the burthen of proof in relation to the fraud upon the partnership. That case, moreover, is made to rest, in some measure, upon the ground that there was no proof that the appropriation of the partnership property was unknown to or unauthorized by the other partner, though such evidence was within the power of the defendant.

The recent case of *Williams* v. *Walbridge*, 3 *Wend.* 415, was in principle like the present, and rules the point now in question. The note was drawn by one of the partners of the firm to a third party, by them endorsed, and was delivered by the partner who drew the note to the plaintiffs in payment of an individual debt. The court held that no title to the paper passed by its delivery to the plaintiffs, and that the defence was available in an action

against the endorsers as well as against the drawers. The facts are precisely the same as in the present case. It does not appear in that case, more than in this, that the plaintiffs saw the note written, or that they knew that it was drawn and endorsed for the express purpose of paying their debt. Upon the evidence in the case, Kennady is not liable upon the note, and according to the agreement stated in the case, the verdict should be entered for the defendant.

The Circuit Court should be advised accordingly.

CITED *in Craig* v. *Hulschizer*, 5 *Vr*. 364.