LUTHER WRIGHT, President of Luther Wright's Bank, Re-
spondent, v. HENRY M. AMES and others, Appellants.

W. L. had a flouring mill which he run upon his own account. He was
also a silent partner in the firm of J. & I. L., produce dealers, and an
active partner in the firm of R. & L. owners of a grain elevator, in
which the latter firm received and stored grain for hire.

W. L. was also the owner of several cargoes of wheat, which were stored
by him in the elevator of R. & L. Upon these he had received advances
from A. & Co., bankers, who took a transfer of the same by way of
security, and the warehouse receipts in their own name, in which it was
declared that the wheat was held in store subject to their order.

Without the knowledge of A. & Co., W. L. took, and applied to his own
use, portions of two cargoes of the wheat thus transferred to and held in
store for them.

Subsequently, upon the order of A. & Co., presented to the elevator of
R. & L., for the balance of the wheat held for them on account of W. L.,
there was delivered instead, a corresponding amount and quality of
wheat belonging to J. & I. L. which was held in store for them. A. &
Co. were not aware that the wheat thus delivered was not the wheat
for which they held the warehouse receipts from W. L., and the same was
sold by them and the proceeds credited to the account with them of W. L.
Subseqently J. & I. L., who also had dealings with A. & Co., effected a
settlement, paying the balance found against them upon the books of
A. & Co., thus releasing their wheat from any liens on such account.

They also requested of A. & Co. the delivery to them of the parcels of
wheat taken by R. & L. from their lot in store, or an account of the pro-
ceeds, which was refused.

Upon an action against A. & Co. by the assignee of J. & I. L., to recover
the proceeds of the wheat belonging to J. & I. L. taken by R. & L. and
sold by A. & Co. for the account of said W. L., it was *held*, that the
taking of the wheat by R. & L. and delivery to A. & Co. in the manner
stated, could not effect any change in the title to the wheat, without
the assent of J. & I. L. that their wheat might thus be taken and sub-
stituted for that belonging to A. & Co. wrongfully taken by W. L. in
the first instance.

That no such assent could be implied from the fact that W. L. was a part-
ner in the firm of J. & I. L., who owned the wheat, and of R. & L.
who held in store and delivered the same to A. & Co.

(For, whatever agency may be supposed to have resided in W. L. as a
partner of J. & I. L., no agency could reside in the firm of R. & L. to
act for J. & I. L. without express authority.)

And that the settlement of their account with A. & Co. by J. & I. L., and payment of the balance claimed by A & Co. to be due, did not constitute on the part of J. & I. L. a ratification of the delivery of *their* wheat to apply on the debt of W. L.

*Hence,* the assignee of J. & I. L. was entitled to recover against A. & Co. the proceeds of the wheat thus wrongfully converted.

THIS is an appeal from a judgment of the General Term of the fifth district, affirming a judgment entered on the report of a referee. The action was brought by plaintiff, as assignee of the firm of J. & I. Lewis, to recover an alleged balance of the proceeds of the sales of certain wheat, alleged to have been sold by defendants, for and on behalf of J. & I. Lewis, on commission. The facts as found by the referee are substantially as follows:

In 1856–7 the firm of J. & I. Lewis were produce dealers at Oswego, the firm consisting of J. & I. Lewis and William Lewis, who was a silent partner therein. William Lewis was also the owner of a flouring mill, which he stocked and run on his own account, and, with one Philander Rathbun, was the owner of the Empire Elevator in which, under the firm name of Rathbun & Lewis, the owners received and stored grain for hire.

In December, 1856, Wm. Lewis was the owner, on his own account, of several cargoes of wheat, which were stored for him in the Empire Elevator, among which was that of the schooner S. J. Holley, of white wheat, and of the schooner Northern Belle, of red wheat.

The defendants were bankers at Oswego, and had made advances to said Wm. Lewis upon his said wheat, and taken a transfer of the same by way of security, to be sold by them on commission, and the avails applied on their advances, and taken the warehouse receipts in their own name, by which it was declared that the wheat was held in store subject to their order.

On and before the 19th of December, 1856, William Lewis, without the knowledge or consent of the defendants, had taken from the cargo of the Holley, 2,150 bushels, and from the cargo of the Northern Belle, 1,000 bushels, and appro-

priated the same to his own use; and all the residue of his wheat was from time to time delivered from the elevator on the orders of the defendants. During the same month of December, the said firm of J. & I. Lewis were the owners of several cargoes of wheat stored in the same elevator, upon which defendants made large advances upon the same security, and in the same form, as above stated, in respect to the wheat of William Lewis—amongst which were the cargoes of the schooner Ontonagon, of white wheat, upon which defendants had advanced $10,708.10 on the 15th of December; and of the schooner Harriet Ross, of red wheat, on which said defendants had advanced $11,023 on the 22d of December, 1856. On the 14th of May, 1857, the defendants, by a written order, addressed to the Empire Elevator, directed the delivery to Ames & Sloan of 2,624 bushels of the cargo of the S. J. Holley (which was William Lewis' wheat); upon this the elevator delivered 474 bushels of the cargo named, which exhausted the same, and 2,150 bushels from the cargo of the Ontonagon (which was J. & I. Lewis' wheat). On the 18th of May the defendants, by a like order, directed the delivery of 1,000 bushels of the cargo of the Northern Belle to said Ames & Sloan; and there being no part of that cargo left in store, the quantity was delivered from J. & I. Lewis' cargo of the Harriet Ross. Ames & Sloan sold the wheat received on these orders, on account of defendants—and the proceeds were credited by defendants to William Lewis, upon account of his dealings with them.

The defendants accounted to J. & I. Lewis for all the wheat pledged by that firm to them, except the two above mentioned quantities, of 2,150 bushels of white wheat and 1,000 bushels of red wheat; and on the 21st day of May, 1857, the said J. & I. Lewis paid to the defendants the amount found to be due to them, upon a statement of accounts between them and upon the order of defendants received from the elevator, all of their wheat not sold and accounted for, except the two parcels above mentioned.

The said firm of J. & I. Lewis requested said defendants to cause those parcels to be delivered, or to account for the

proceeds thereof, which they refused to do; and, on the same day, that firm assigned said wheat, and all these claims in respect thereto, to the plaintiff herein, who made a like demand with à like result.

Upon these facts, the referee found and states as his con-conclusions of law :

" 1. That the defendants did not, by any act of William Lewis or Rathbun & Lewis, or their servants and agents in the elevator, or by the delivery of the wheat of J. & I. Lewis upon orders drawn against the wheat of William Lewis, acquire any title, to the wheat of J. & I. Lewis, as against the latter.

2. That, notwithstanding such delivery, the property in the wheat, delivered subject to the lien of defendants, remained the property of J. & I. Lewis.

3. That, upon the sale of the wheat, and the conversion thereof into money, the same belonged of right to J. & I. Lewis, and should have been credited and allowed to them in their accounts and dealings with them by the defendants.

4. That the defendants acquired no title to the property or the proceeds of the sale by any consent or directions of William Lewis, expressed or implied, to credit or allow the same in satisfaction of a precedent debt due from him, and the credit and allowance thereof, in pursuance of such consent and directions.

5. That the wheat was not transferred by William Lewis to defendants in the ordinary course of business and for a valuable consideration, so as to divest the title of J. & I. Lewis and debar them from an accounting for it.

6. That there was no appropriation of the avails and proceeds of the sale to the credit of William Lewis, or to any purpose, by the authority of J. & I. Lewis, or by any agency binding upon them.

7. That the said J. & I. Lewis and the said Luther Wright's Bank, as assignees, were and are entitled to a delivery of said wheat or an accounting for its avails from the defendants.

8. That the application of the moneys realized from the sale of the wheat to the payment of the debts of William

Lewis was unauthorized and in fraud of the rights of J. & I. Lewis, and constitutes no defense to the defendants in this action."

The referee then proceeded to state the account in respect to the said two parcels of wheat; and, after crediting defendants with the amount of an error against them in their settlement with J. & I. Lewis, ordered judgment against them for a balance of $5,130.47, as the residue of the proceeds of said two parcels of wheat, with interest, etc.

The defendants excepted generally to each of said several findings of fact and conclusions of law, except to so much as allowed them a credit for the error above mentioned.

*George F. Comstock*, for the appellants.

*W. F. Allen*, for the respondent.

DAVIS, J.   When the defendants drew their orders on the Empire Elevator for the delivery to Ames & Sloan of 2,624 bushels of the cargo of the S. J. Holley, and 1,000 bushels of the cargo of the Northern Belle, there was none of the latter, and but 476 bushels of the former remaining in store. The deficiency had long previously been surreptitiously taken out by Wm. Lewis ; and Rathbun & Lewis, the owners of the elevator, committed an additional fraud by delivering to Ames & Sloan, who were the agents of defendants, 3,150 bushels of the wheat of J. & I. Lewis.

There was no pretense of a sale of this wheat, for a valuable consideration, to defendants.   It was delivered to them simply as a part of the wheat which they held as security for the indebtedness of William Lewis, and not upon a purchase and sale from Rathbun and Lewis or William Lewis, nor upon any new consideration whatever.   Ames & Sloan received this wheat to sell on commission for defendants, and, having sold the same, paid over the proceeds to them.   It is difficult to conceive any principle upon which this process can be held to have changed the ownership of the wheat. Grant that defendants were in total ignorance of the fact that the wheat delivered was the property of J. & I. Lewis,

their want of knowledge, and consequent innocence of design to obtain that wheat, could have no effect upon the title. The wrong which injured them had long before been perpetrated, and its consequences are not to be shifted on to other shoulders because dishonest warehousemen have delivered to them the property of others where they demanded their own. Nothing but the assent of J. & I. Lewis that their wheat might be substituted and delivered for that wrongfully taken could have the effect to change the title of the property. The referee has failed to find any such assent, but, by his conclusions of law, if not by any express finding of fact, has necessarily negatived its existence. But it is argued, in substance, that, from the facts found, the law, by necessary implication, declares this assent, and, consequently, the legal conclusion of the referee is wrong. To this position the point must be reduced, because the defendants failed to ask for any express finding in their favor on this question, and to except to any omission or refusal so to find.

The fact out of which this implication must grow, if at all, is, that William Lewis was a member both of the firm of J. & I. Lewis, and of the firm of Rathbun & Lewis, and it must be established that the act of the latter firm, though greatly to the prejudice and injury of the former, derives the impress of their assent from this relationship of William Lewis to both firms. It nowhere appears that William Lewis acted personally in the delivery of the wheat in question, nor that he assumed to act as a member of or on behalf of the firm of J. & I. Lewis in such delivery. On the contrary the findings indicate that the wheat was delivered by Rathbun & Lewis, and the evidence shows that the delivery was made by the servants of that firm without the personal intervention of William Lewis. Every member of a firm is in a certain sense the general agent of the firm; but it has never been held, I think, that every firm is the agent, general or special, of every other firm of which either of its members is also a member. Such a doctrine would be no less novel than dangerous, and should not be announced by this court without a clear line of authority requiring it. When, there-

fore, Rathbun & Lewis' assumed to deliver the property of J. & I. Lewis to make up a deficiency which their wrongful act had created, that firm were not agents of the owners of the property without an express authority. The law could imply none from the fact that one of their members was also a partner in the firm of J. & I. Lewis, because, in making the delivery, they acted as a firm standing upon its own rights, and not as agents of another copartnership; because as a firm they were not members of the owner's firm; and because the individual who was such member did not assume to act on his own behalf, nor upon the agency for the other firm, which his relationship to them conferred upon him.

We are not, therefore, in my judgment, called to pass upon the question as to what would have been the effect, if Wm. Lewis had taken the wheat of J. & I. Lewis from the firm of Rathbun & Lewis, and delivered it to defendants on his private indebtedness; for no such state of facts is found or proved. Even in that case it would be difficult to uphold defendants' title, whatever rights equity might secure to them in the ultimate interest of William Lewis in the property. (3 Kent, 40; Story on Agency, § 124; 1 Bouvier's Inst., 104; Colly, on Part., § 503; Story on Part., § 133; *Ryer* v. *Batchelor*, 12 Peters, 229; 3 Pick., 54; 16 Johns., 38.)

The defendants also insist that J. & I. Lewis ratified the act of delivering their wheat to apply on William Lewis' debt to them, by the settlement of their account and the payment of the balance claimed against them. Here also the defendants are embarrassed by the fact that the referee has not only failed to find such ratification, and was not requested to find it, and an exception taken to his refusal; but also by a pretty distinct express finding and a necessarily implied one the other way. Certainly the referee could have given no judgment against defendants without necessarily holding that the act of applying the wheat to William Lewis' debt was not ratified by J. & I. Lewis; and, as this court is to uphold judgments by intendment when not contrary to facts found or proved, it would be going far to say that we should spell out a ratification from any evidence in this case in order

to overturn the judgment. Besides, the referee has found the facts (which he mistakenly states as conclusions of law) " that there was no appropriation of the avails and proceeds of the sale to the credit of William Lewis, or to any purpose, by the authority of J. & I. Lewis, or by any agency binding on them," and " that the application of the moneys realized from the sale of the wheat to the payment of the debt of William Lewis was unauthorized and in fraud of the rights of J. & I. Lewis."

The settlement was obviously made, I think, for the purpose of bringing the matter to a point where J. & I. Lewis, or their assignee, could demand the wheat or its proceeds discharged of any lien of the defendants; and there was no intent on the part of either party to cut off the claim, as it would have been inequitable to have done. It is not necessary or profitable to pursue the idea of ratification further.

The point that defendants should at least have been allowed to retain the supposed interest of William Lewis in the proceeds of the wheat is abundantly answered, I think, by the views above suggested, on the question whether he, either personally or as a member of the firm of J. & I. Lewis, transferred any such interest to defendants. No tortious act of Rathbun & Lewis could make the defendants joint tenants or tenants in common of J. & I. Lewis in property wrongfully converted; and hence this question is already sufficiently disposed of. Besides, it was not urged or raised below; and this court has repeatedly held that it does not sit to instruct parties as to how their causes could have been better tried.

I think the judgment should be affirmed.

PORTER, POTTER, CAMPBELL and BROWN, JJ., concurring,

Judgment affirmed.