## CALDWELL & A. *v.* SCOTT & A. & TRUSTEE.

One partner cannot apply the partnership funds or securities to the discharge of his own private debt without the consent of the other partners, either express or implied.

Nor does it make any difference whether such creditor knew that it was partnership property or not, that was thus applied in payment of his debt.

When one partner retires from the firm and releases all his interest in the assets to the other partner, who agrees to pay all the company debts, the right of priority still continues in the partnership creditors in respect to such assets.

FOREIGN ATTACHMENT, by Caldwell, Tate & Co. against Scott & Jewell, principals, and A. O. Parker, trustee. The writ was served on the trustee in 1873. The question was, whether the trustee was chargeable. Scott & Jewell were partners in the grocery business. The trustee sold to Scott, on his individual credit, furniture to the amount of between $100 and $200, for which he soon paid $50, and was to pay the rest in two months; but not being able to pay, and being dunned for it several times, Scott requested the trustee to take groceries from the defendant's store as he should want them from time to time for his family use; and between March 1 and May 4, 1872, the trustee took groceries, in pursuance of Scott's request, to the amount of $50.34, upon an understanding with Scott that they were received in payment of Scott's individual debt. October 19, 1872, Scott receipted a bill of the groceries, signing the firm name of Scott & Jewell.

On one occasion, during the time the trustee was taking the groceries, Scott, being inquired of by the trustee, told him he was having them charged to his own account with the firm. The ledger of the firm shows, under date of July 6, 1872, the trustee's bill of groceries charged to Scott in Scott's handwriting. Jewell never assented to the groceries going to pay Scott's debt. The firm was dissolved May 14, 1872, when Jewell sold out to Scott, who took one Balch into partnership with him on the same day. At the dissolution, Scott was to have all the partnership property and pay all the partnership debts. They calculated there would be $3,333.33 to be equally divided between them, over and above what was needed to pay debts; and Jewell received $1,666.66 by Scott's paying a debt of Jewell's for $1,000, giving him his own note for about $400, and paying him the balance in cash. It turned out that the firm were owing more than they calculated, and that the balance of the value of the assets over and above the debts was $1,334.29 instead of $3,333.33. Scott failed to pay the firm debts.

Case reserved.

*H. S. Clark,* for the plaintiffs.

1. Partnership property is a fund out of which the partnership debts are entitled to be paid before it can be applied to the payment of the debts of the individual partners. *Tappan* v. *Blaisdell*, 5 N. H. 190, and cases cited; *Morrison* v. *Blodgett*, 8 N. H. 248.

2. It is an illegal act, and a fraud on the creditors of the partnership, to divert the partnership property to a different purpose, and especially so, to do it without the knowledge or assent of the other partners. *Rogers* v. *Batchelor*, 12 Curtis 705, par. 230.

A case where the partnership property had been applied to the payment of a debt of a creditor of one of individual partners, the private creditor having no notice that it was partnership property, it was held, STORY, J., delivering the opinion, " that it was an illegal conversion of the funds of the partnership, and the private creditor could have no better title to the funds than the partner himself had, and that it made no difference that the separate creditor had no knowledge at the time of the misappropriation of the funds of the partnership, and if he [the private creditor] had knowledge [precisely this case] he would be guilty of gross fraud, not only in morals but in law, and [paragraph 232] that the true principle is, that one partner cannot apply the partnership funds or securities to the discharge of his own private debt without the consent of the other partners, and that without their consent the title of the partnership is not divested in favor of the private creditor, whether he knew it to be partnership property or not; and if they had knowledge it was the partnership funds or property, unless the other partner consented the payment would be a fraud upon the partnership." *French* v. *Lovejoy*, 12 N. H. 458,—where it was held that the surviving partner could not lawfully assign debts due the partnership to the prejudice of the partnership creditors,—and cases cited. Can it make any difference what constituted the partnership property, whether it was real or personal, or choses in action ? Or can it make any difference in regard to the law, whether one of the partners be dead, or that one of the partners should do some illegal act in such a manner that the other does not know it, there being nothing in the act itself to put him on his guard or on inquiry ? We think not, clearly.

3. The conversion of the partnership property under the agreement between Scott and Parker was completed when the goods were delivered, and as between Scott and Parker operated as payment *pro tanto* at the time of delivery. The receipting on October 19, 1872, of Scott & Jewell's bill against Parker by Scott, and Parker's giving Scott credit for the same, were done only in pursuance of the agreement between them. The goods being all delivered before the dissolution, the fraud was consummated before the sale of Jewell's half to Scott, and it can make no difference in this case, that all the firm property became Scott's afterward. And we submit that Scott's entries on the ledger, being different from the actual transaction and his statement to Parker " that he was having the goods charged to his private account," which was contrary to the fact, show fraud conclusively, not only in law but in fact, upon both the firm creditors and his partner.

4. Parker was a party to this fraud on the creditors and on Jewell. (1.) There was no attempt made by Parker to obtain payment in this way until he had failed to obtain it in any other. Parker did not rely on the firm of Scott & Jewell for his pay. He trusted Scott individually, and it was not until he found himself unable to collect his pay of Scott that he attempted to collect it of the partnership. This (second) agreement on the part of Scott was outside of his rights and authority as a partner—Story on Part., ch. 7, par. 110—and Parker must have known it. A party is presumed to know the consequences of his own acts. 1 Greenl. Ev., sec. 18. (2.) He never obtained the assent of Jewell to this arrangement, but, on the other hand, had reason to believe that Jewell did not know of it.

5. This agreement between Scott and Parker being a fraud on Jewell, and on the creditors of the firm on the part of Scott, and Parker being a party to it, vitiates the whole agreement, and renders it voidable at the election of the party injured. *Jones* v. *Emery*, 40 N. H. 348, and cases cited.

6. The specification shows that the debt of the plaintiffs was contracted before the sale of Jewell's half to Scott. It cannot then be doubted but that these plaintiffs are or have been injured by this conversion of the property of the firm by Scott and Parker to the payment of Scott's individual liabilities.

*Briggs & Huse,* for the trustee.

The trustee is not chargeable, unless at the time of the disclosure the principal defendants had a right of action against him for some indebtedness, or for property in his possession belonging to them. Had Scott & Jewell any claim upon this trustee?

The trustee purchased of the defendant, Scott, at his request, a bill of groceries amounting to $50.34, upon a special contract that he should pay for said groceries by cancelling the indebtedness of Scott to him to that amount; and the goods were delivered to Parker in pursuance of this special agreement. It does not appear that either member of the firm of Scott & Jewell ever asked Parker to pay for the goods in any other way than was stipulated in the special contract, and Jewell never objected in any way to the performance of the contract. Scott, as a member of the firm, had a right to make such a contract. He was not restricted by any article of copartnership to making sales, the consideration for which should be money only; and, in the absence of fraud, the firm were bound by the contract, and could not maintain any action for the recovery of the amount claimed to be due to them in this suit. *Greeley* v. *Wyeth*, 10 N. H. 15, and cases cited.

There was no fraud on Jewell, or on any creditor of the firm, nor was there any effort or attempt, in this special contract, to divert the funds of the partnership from the payment of the legitimate partnership debts for which they were holden. The case finds that at the time of the sale to Parker, and up to the time of the dissolution of the firm of

Scott & Jewell, the firm was perfectly solvent, and upon its dissolution Jewell received his equitable portion of the value of the groceries which went into the possession of Parker, and of all the stock in trade.

Prior to the commencement of this suit, the firm of Scott & Jewell had been paid in full for these groceries in question, Jewell having received his pay from Scott, as the case finds; Scott had charged the goods to himself on the books of the firm, had received his pay in full in accordance with his contract with Parker, and had receipted the bill in the name of the firm, as he had a perfect right to do. No property of the firm was diverted from its application to the payment of firm debts by means of this transaction, for all the property of the firm had properly and lawfully come into the possession of Scott before the commencement of this action. There is nothing in the case which tends to show fraud, or from which fraud could in any way be inferred, on the part of this trustee, or between him and either of the parties to the suit; and without fraud there is no ground for charging the trustee. But fraud is never to be presumed; it must be proved. *Russell* v. *Convers*, 7 N. H. 344.

The fraud which deprives these plaintiffs of their just dues, and which misapplies the funds of the partnership, is wholly subsequent to the transaction between Scott and Parker, and entirely independent of Parker. It is simply the refusal or neglect of Scott to apply the partnership assets still in his hands, as the case finds, a part of which was the amount realized by him from the sale of groceries to Parker, to the payment of his partnership debts. He has in his possession exactly the same amount of partnership funds that he would have had if Parker had paid Scott cash for the groceries, and Scott had paid Parker in cash out of his share of the partnership earnings, the firm being solvent.

The firm have received full compensation for the goods delivered to Parker, each partner has ratified and approved of the sale by receiving and accepting his equitable share of the receipts of the sale, the whole of the company assets, including the actual value of the goods sold to Parker, came legally and without fraud into the possession of Scott by the sale of Jewell's interest to him; and there they still remain, so far as the case shows. The trustee has nothing in his hands which belongs to the firm, or which they could maintain an action to recover, and should be discharged.

SARGENT, C. J. The first question raised by this case is, whether the funds of a partnership can be rightfully applied by one partner to the discharge of his own separate preëxisting debt, without the assent, express or implied, of the other partner; and whether it makes any difference, in such a case, that the separate creditor had no knowledge at the time that the fund thus appropriated to the payment of his debt was partnership property.

In *Rogers* v. *Batchelor*, 12 Pet. 221, 232, it is said that the true principle to be extracted from the authorities is, that one partner cannot

apply the partnership funds or securities to the discharge of his own private debt without their (the other partners') consent; and that without their consent, their title to the property is not divested in favor of such separate creditor, whether he knew it to be partnership property or not. In short, his right depends, not upon his knowledge that it was partnership property, but upon the fact whether the other partners assented to such disposition of it or not.

In this case, it is found that Jewell did not consent that the groceries of the firm should go to pay Scott's debt to the trustee; but we cannot fail to find that though he gave no actual assent to this arrangement, yet his assent may be, and we think must be, implied from the circumstances of the case,—for he sold out the whole of the company property to Scott, and that left him at liberty to do as he pleased with the property; and before this trustee process was served, the whole debt had been adjusted, paid, and arranged between Scott and the trustee, so that no suit could be maintained by the firm against the trustee at the time service was made on him in this case; because, after the sale of all the goods to Scott by Jewell, Scott had in behalf of the firm settled this account and given a receipt for it in full, and, so far as appears, while there was company property sufficient to pay all the company debts.

This process against the trustee cannot be maintained, we think, on the ground that it was a fraud on Jewell, the other partner.

But a second question which arises is, Was this arrangement between Scott and this trustee a fraud upon the creditors of the firm?

In *French* v. *Lovejoy*, 12 N. H. 458, it is held that a surviving partner, though he has the right to dispose of the goods of the firm for a lawful purpose, has no right to assign them for the purpose of paying his private debt to the prejudice of partnership creditors; and in *Tenney* v. *Johnson*, 43 N. H. 144, it is held that where one partner retires from the firm and releases all his interest in the assets to the other partner, and receives from him an obligation to pay all the company debts, the right of priority still continues in the partnership creditors in respect to such assets. This case would seem to bear directly upon the question involved in the case now before us. See, also, *Whitney* v. *Dean*, 5 N. H. 249; *Russell* v. *Convers*, 7 N. H. 343; *Weaver* v. *Weaver & Sibley*, 46 N. H. 188.

Upon the weight of the New Hampshire authorities, we do not see how the trustee can avoid being charged in this proceeding, upon the ground that to allow the assets of the company to be applied to pay the private debt of this trustee would be a fraud upon the creditors of the firm.

*Trustee charged.*